IN RE GUARDIANSHIP OF FLOYD BALDWIN.

No. 41867.

DECEMBER 12, 1933.

Mitchell & Mitchell, and Franklin Jaqua, for appellant.

C. W. Garfield, for appellee.

STEVENS, J.—The real difficulty in this case is attributable more to the procedure followed than to any inherent uncertainty as to the law. Stated clearly, the decisive question becomes one largely, if not wholly, of fact.

Lemuel L. Buck died testate on or about December 4, 1922. His will was duly admitted to probate in January following, and T. S. Buck, his son, named as executor in the will, duly qualified and entered upon the discharge of his duties. In due time he filed a final report and was discharged as such executor.

A portion of the estate of Lemuel L. Buck was bequeathed to Gertrude Baldwin, Alva Baldwin, Lewis Baldwin, and Floyd Baldwin, minor children of decedent's sister, share and share alike; $400, the proceeds of life insurance, also passed to the above-named minors but not under the will. T. S. Buck was appointed their guardian, who qualified by executing a bond in the sum of $600, signed by two property owners as sureties. No final settlement appears to have been had of the guardianship. On May 3, 1924, T. S. Buck executed a bond as trustee for the benefit of the minors above named in the penal sum of $3,000 with the Detroit Fidelity & Surety Company as surety thereon. The final report of T. S. Buck as executor was approved January 23, 1925.

Among the assets in the hands of the executor on the date on which his final report was approved was a note for $2,500. On said date, the said executor receipted to himself as guardian for said note. The bond executed by him as trustee was filed in the office of the clerk of the district court and duly approved by the clerk on May 4, 1924, the day after its execution. The will of Lemuel L. Buck contained the following provisions:

"Item II. All the remainder of my estate, whether real, personal or mixed, I give, devise and bequeath as follows, viz: One-third of my Estate to my son, T. S. Buck. One-third of my Estate to my daughter, Hattie L. Watts, and the remaining One-third to the children of my deceased daughter Ida Myrtle Baldwin, viz., Gertrude Baldwin, Alva Baldwin, Lewis Baldwin and Floyd Baldwin, share and share alike.

"The share hereby devised to my said grandchildren shall not be payable to them until they become of age, but my executor is instructed to place the same at interest to the best advantage possible, and to expend the interest of said share, for the benefit of said

children as he may deem most advisable, but as nearly as may be, in equal share to each. * * *

"Item VI. I nominate and appoint my son, T. S. Buck, the executor of this my will, and appoint him *trustee*, of the share of my estate allotted to my grandchildren, above named, and if the court require a bond I direct that the cost thereof be made a charge against my estate.

"In testimony whereof, witness my hand at Bradgate, Iowa, this 10th day of October, A. D. 1916."

The court found that T. S. Buck held the balance of the proceeds of the $2,500 note, with one or two other small items belonging to the minors above named, as trustee, and entered judgment against the appellant, Detroit Fidelity & Surety Company, as surety on said bond.

The cause of action was tried in probate without any action whatever to have it transferred to the equity docket or for trial as an ordinary action, to a jury. The cause is not triable *de novo* in this court, and the finding and decision of the trial court on all issuable questions of fact must be given the same weight as the verdict of a jury.

We now proceed to a statement of the issues as tendered and made up in the district court. There appears to have been much uncertainty in the mind of counsel as to the issues that should be tendered in this proceeding. Floyd Baldwin, having reached his majority on July 5, 1931, filed a petition in probate entitled "In the Matter of the Guardianship of Floyd Baldwin and others" reciting the necessary averments and asking that T. S. Buck, as guardian, be required to render an account. The appellant surety company was made a party to this proceeding.

It was alleged in the petition that the bond designated as a trustee's bond was executed as additional security for T. S. Buck as guardian. To this petition, the surety company appeared and filed an answer and resistance to the prayer of the petition. The surety company in the document filed denied that it ever executed a bond as surety for T. S. Buck as guardian, and alleged that, if its name was signed as surety to any bond of T. S. Buck as trustee, it was executed without authority and that no premium was ever paid thereon. Thereupon petitioner filed an amendment to his petition alleging certain facts as to the execution of the said trustee's bond, and, by way of conclusion, alleged that the word "trustee"

was inserted therein instead of the word "guardian" by inadvertence. This was followed by a motion which does not appear to have been ruled upon, in which appellant asked that portions of the amendment to the petition be stricken. The filing of the foregoing motion was countered by a motion on behalf of the appellant to strike and for more specific statements, but, so far as the record shows, no ruling was had on this motion.

Proceeding further, petitioner at this point filed a second amendment to his petition alleging that the term "guardian" and "trustee" was used interchangeably in the proceeding in probate, and that the intention of the parties who executed the bond was to secure the designated beneficiaries of the estate against loss by any act of T. S. Buck, whether as guardian or trustee. Appellant at this stage of the proceedings apparently discovered new matters, and, for the purpose of simplifying the issues, filed an amendment to its answer admitting the execution of the trustee's bond and that Curtis E. Hanson, as its agent, was authorized to sign the same, but denying that any funds ever came into his hands as trustee. On the same date on which the foregoing pleading was filed, appellant filed a second motion to strike petitioner's second amendment to his petition. The record does not show a ruling of the court on this motion. Appearance was made and answer filed on behalf of the personal sureties on the original $600 guardian's bond.

As already observed, the receipt executed by T. S. Buck to himself as executor on June 16, 1924, upon the approval by the court of his final report, is signed by him as guardian of the above-named minor beneficiaries under the will of Lemuel L. Buck. No record appears to have been ever made of any actual transfer of the proceeds of the $2,500 note or any other sum by T. S. Buck as guardian to himself as trustee. Although living at the time of the commencement of these proceedings, T. S. Buck died before the matter was reached for trial.

Many objections were interposed by appellant to testimony offered on behalf of appellee and overruled by the court. Vigorous complaint is now urged of such adverse rulings. Whether erroneous or not, they could not necessarily have affected the final conclusion and judgment of the court. This is true for the reason that the court may well have inferred from the competent and, in large measure, undisputed testimony that every one connected with the proceeding knew and understood that Buck assumed the office of

trustee and was to account for the funds in his hands as such. The trustee's bond was executed prior to the approval of the executor's final report, and that it was executed in contemplation of the final settlement of the estate and guardianship is, we think, clearly disclosed by the evidence. Curtis Hanson, the agent of appellant who obviously prepared and who executed the bond, in preparation therefor went to the office of the clerk of the district court in which the estate and guardianship were being administered and made a personal examination of the will and of all of the records in the estate. It may be conceded that the receipt executed by Buck as guardian to himself as executor should have been signed by him as trustee and not as guardian. The attorney for the guardian testified that he employed the words "guardian" and "trustee" interchangeably. The competency of this testimony is seriously challenged by appellant. Whatever may be said as to the understanding and belief of counsel, it is undisputed that the trustee's bond was prepared and executed in pursuance of the provisions of the will, and was intended by the parties to secure the funds in the hands of Buck as trustee after his final report as executor had been approved by the court. The record does not show that Buck was appointed trustee by the court, but he is so designated in item VI of the will quoted above. In his petition for discharge as executor, he said:

"And he specifically asks the Court to approve the distribution of the estate securities on behalf of the minor heirs, Alva, Lewis, and Floyd Baldwin, to-wit: a first mortgage and note on real estate in Bradgate, Iowa, executed by Chris Olsen and Marie Olsen at 8% in the sum of $2,500.00 dated 3/1—'21 due March first, 1926, and which in the judgment of T. S. Buck, *trustee*, is a sound investment."

Had Buck have signed the receipt above referred to as trustee instead of as guardian, there would be no doubtful question in this case. The pleadings filed on behalf of appellee pursue an uncertain and somewhat inconsistent course. Were the case in equity, there would be no trouble for the court to reach the same result as that arrived at in the court below. The intention of the parties must be taken into consideration. The purpose of the execution of the bond signed by appellant as trustee is too obvious for discussion. Of course, if he, in fact, never received the sums in controversy as trustee, then the bond did not become operative and the surety

should be discharged. The fund was in the custody of T. S. Buck personally, and it would be exceedingly technical for the court to hold that the absence from the proof of documentary evidence that he transferred it from himself as guardian to himself as trustee, that the bond in controversy did not go into effect. Even the affirmative showing that Buck signed the receipt as guardian instead of as trustee is not conclusive that the fund did not ultimately come into his hands as trustee.

The court had a right to draw all proper and reasonable inferences from the record and from the facts shown in the evidence. The conclusion of the trier of the facts based upon inferences legitimately to be drawn from the record is binding and conclusive upon this court. Considering the record as a whole, this court is not prepared to say that the finding and judgment of the trial court is without sufficient support in the evidence.

Perhaps the contention on behalf of appellant that the issues presented could not be properly tried in probate or in the guardianship matter should be mentioned. As stated, no effort was made by appellant to have the issues transferred to some other forum for trial. The trust was testamentary and triable in probate. The judgment must be, and it is, affirmed.—Affirmed.

ALBERT, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.