IN RE GUARDIANSHIP OF FRANK DAMON.

O. A. BURNETT, Guardian, Appellant, v. FLORENCE BLAZEK, Guardian, Appellee.

No. 47035.

JUNE 17, 1947.

J. P. Degnan, of Bellevue, and Miller, Miller & Cousins, of Clinton, for appellant.

Schoenthaler & Lee and Arthur F. Janssen, all of Maquoketa, for appellee.

GARFIELD, J.—On April 29, 1946, O. A. Burnett filed his final report as guardian of Frank Damon's property. On July 21, 1945, he had been appointed such guardian under section 12617, Code, 1939 (section 670.5, Code, 1946), upon the petition of Damon, which recited he was past eighty-two years old, very forgetful, and unable to look after his property. Damon, the ward, died testate on March 14, 1946.

The guardian's final report recited that in December 1945, he received $5,928 from the sale of six United States bonds,

series G, each of $1,000 par, issued in April 1945, to "Frank Damon or Mrs. Eva Damon." The report asked that it be approved and the guardian be authorized to turn over to himself as executor of Frank Damon, deceased, the assets in his hands, after payment of guardian's and attorney's fees and court costs, and for such other orders as the court may consider proper.

Florence Blazek, who had been appointed and qualified as guardian of Evelyn Damon's property on March 23, 1946, applied to the court for, and was granted, authority to file objections to the final report of Burnett, guardian. Evelyn Damon is the same person as Eva Damon, whose name appears as co-owner with her husband, Frank Damon, of the $6,000 of series G bonds.

The objections to the final report state: Neither Evelyn nor her guardian knew prior to the filing of his final report that Burnett had cashed the $6,000 of series G bonds; Burnett never asked nor obtained any court order to liquidate the bonds; Evelyn had a contract and property right in the bonds which Burnett cashed illegally to Evelyn's damage in the sum of $5,928. The prayer of the objections is that Burnett's final report be not approved, the objector have judgment against Burnett, guardian of Frank, for $5,928, and for such other orders and judgments as may be proper. No pleading was filed in response to these objections.

Hearing was had before the district court, presumably sitting in probate, upon Burnett's final report and the above objections thereto. A stipulation of facts was entered into which, together with the files in both guardianships and other documentary evidence, constitutes most of the record. Burnett testified briefly. Both sides furnished the court written briefs and arguments. The court filed findings of fact, conclusions of law, and order, in which the objections to the final report were sustained, Burnett, guardian, was ordered to pay $5,928 to the guardian of Evelyn's property, the guardian was allowed $250 compensation and his attorney $150. Burnett, guardian, has appealed to this court.

I. Appellant's principal contention upon this appeal

is that the probate court was without power or jurisdiction to hear or determine. objector-appellee's claim against him and that appellee's only remedy was an action against appellant "in a court of competent jurisdiction." The contention is without merit.

In this state the probate court is not a separate or distinct court with powers and jurisdiction strictly its own. It is part of the district court, which has general, original jurisdiction of all actions, proceedings, and remedies. We have frequently pointed out there is but one court of general jurisdiction in Iowa—the district court. Before it all proceedings come, whether law, equity, or probate. Forms of action differ but they are not controlling. Separate dockets are kept merely for convenience and efficiency, to expedite the administration of justice. The remedy to which a party is entitled may be awarded in utter disregard of its place on the calendar unless objection is raised in the manner prescribed by statute—a motion to transfer to the proper docket. If no such motion is made, any error in the kind of proceedings adopted is waived. See sections 611.7, 611.9, 611.12, Code, 1946.

Some of our many decisions which support these views are In re Estate of Anders, 238 Iowa 344, 350, 26 N. W. 2d 67, 71; Jennings v. Schmitz, 237 Iowa 580, 585, 20 N. W. 2d 897, 901, and cases there cited; In re Estate of Ferris, 234 Iowa 960, 973, 14·N. W. 2d 889, 897; In re Guardianship of Baldwin, 217 Iowa 279, 251 N. W. 696; In re Estate of Heaver, 168 Iowa 563, 567, 568, 150 N. W. 698; Easton v. Somerville, 111 Iowa 164, 170, 82 N. W. 475, 82 Am. St. Rep. 502. See, also, Baitinger v. Elmore, 208 Iowa 1342, 1345, 1346, 227 N. W. 344.

Since appellant made no request to the lower court to transfer the cause to either law or equity he is in no position to complain here that the cause was heard and determined by the district court while sitting in probate. In the absence of a motion to transfer to another docket the court, in probate, had all the power and jurisdiction with respect to this controversy it would have either at law or in equity. It is not contended the district court was without jurisdiction to hear and determine the matters in issue. Indeed, we assume it is the

"court of competent jurisdiction" to which appellant refers in argument.

In this opinion we assume, without in any way deciding, appellee should have asserted her claim against Burnett at law, or perhaps, on some tenable theory, in equity rather than in probate. We further assume, as the parties apparently do, the hearing below was in probate. We find nothing in the record to show how the cause was docketed or that it was in fact heard in probate. Some of the allegations of a motion by Burnett to reopen the hearing, filed more than a month and a half after the evidence was taken (the motion was overruled and appellant makes no complaint in this court of such ruling) indicate the hearing was, or should be, in equity. The motion states in part:

"1. That the facts essential to an equitable determination of the issues * * * were not fully presented to the court. * * * 5. That in order to do equity, the court should have all the facts before him * * *."

■ The court, sitting in probate, was not deprived of jurisdiction by the ward's death. It is true that upon such death the powers and duties of the guardian ceased, except the duty to report and account for the assets which had come into his hands. The guardianship, in a sense, continued for the purpose of such accounting and to enable the guardian to turn over the assets in his hands to the proper person. 25 Am. Jur., Guardian and Ward, section 53; 39 C. J. S., Guardian and Ward, section 41; Pugh v. Jones, 134 Iowa 746, 112 N. W. 225, 11 L. R. A., N. S., 706, 120 Am. St. Rep. 451, 13 Ann. Cas. 499. The property in the hands of the guardian was still in custodia legis, although his ward had died. Pugh v. Jones, supra. At least, in the absence of any motion in the court below to transfer the cause to another docket the court was not without jurisdiction because of the ward's death.

■ II. Although what we have said is a complete answer to appellant's principal claim to a reversal, we may observe that it was he who invoked the jurisdiction of the district court, presumably in probate, and he is in no position to attack such

judisdiction. He procured from the court an order directing that personal service of notice of the hearing on his final report be given appellee and her ward. Appellant personally obtained from appellee and her ward acknowledgment of service of such notice, addressed to them, with copy of the final report attached thereto. The notice signed by appellant and his attorney stated that unless appellee appeared before the district court on or before the day set for hearing the final report would be approved, appellant discharged as Damon's guardian, and his bond exonerated. The final report attached to the notice disclosed that appellant had cashed the $6,000 of series G bonds payable to Frank or Mrs. Eva Damon and put the proceeds into the trust estate as property of his ward. As directed in the notice of hearing, appellee filed her objections to the final report.

As stated, appellant filed no motion to transfer to another docket nor any pleading in response to the objections but willingly participated in the hearing before the district court which he initiated. Appellant, so far as appears, acquiesced in some of the provisions of the order appealed from, such as those allowing him guardian's and attorney's fees pursuant to his request in his final report. Presumably he has received the benefits from such provisions.

Appellant invited the district court to hear and determine this controversy in the manner in which it was heard, i. e., upon his final report and any objections that might be filed thereto. He thereby waived any right he may have had to question its jurisdiction and is in no position to contend in effect that the hearing instigated by him was a nullity.

"If a guardian submits to a settlement in a court which has no jurisdiction over him, he may waive his right afterward to question the jurisdiction * * *." 39 C. J. S., Guardian and Ward, section 153a(2).

See, also, as having some bearing, Staples v. Staples, 238 Iowa 229, 233–236, 26 N. W. 2d 334, 336, 337, and cases cited; In re Estate of Ferris, 234 Iowa 960, 971, 972, 14 N. W. 2d

576

889, 896; Marsh v. Huffman, 199 Iowa 788, 793, 202 N. W. 581, 583, where we say, "* * * having participated in the proceedings of the court, he thereby submitted himself to its jurisdiction * * *." In the Ferris case, supra, we quote with approval from an earlier case, Read v. Rousch, 189 Iowa 695, 699, 179 N. W. 84, 86:

" 'A defendant cannot be heard to attack the jurisdiction of a court in which he is sued, and at the same time invoke such jurisdiction affirmatively in his own behalf.' "

III. Appellant contends the executor of Frank Damon, deceased, was a necessary party in the court below, that he was not a party, therefore the court was without jurisdiction.

Upon the death of a ward his guardian is required to account, under the direction of the court, to the ward's administrator (or executor). Pugh v. Jones, supra (134 Iowa 746, 112 N. W. 225, 11 L. R. A., N. S., 706, 120 Am. St. Rep. 451, 13 Ann. Cas. 499). It seems to follow that the executor of Damon's estate was an indispensable party in the lower court. Even if the executor were not a party, the court would not, by reason thereof, be without jurisdiction. Absence of other parties does not go to the court's jurisdiction over the subject matter or the parties before it. Tod v. Crisman, 123 Iowa 693, 700, 701, 99 N. W. 686; Stewart v. Hall, 150 Iowa 744, 747, 130 N. W. 993; Middle States Util. Co. v. City of Osceola, 231 Iowa 462, 467, 1 N. W. 2d 643, 646, and cases cited.

But we think the executor of Damon's estate was given notice of the hearing, appeared in person and with his attorney, and under all the circumstances is bound by the court's order. The pertinent facts are these:

As stated, it appears from appellant's final report that he was executor of the estate of Frank Damon, deceased, as well as guardian of his property. The same attorney acted for appellant as guardian and as executor. The final report asked the court to prescribe the notice to be given of the hearing on the report and "the manner of service thereof to all interested persons," that upon the hearing "he be authorized to turn over the assets that are in his hands as such guardian

* * * to himself as executor of the estate of Frank Damon, deceased, and for such other orders as the court may consider proper." Thus, in a sense, appellant as executor joined in his report as guardian.

The court ordered "that notice of such hearing be posted at the front door of the courthouse directed to all interested persons, at least ten days before the time set for such hearing." The court also approved the form of notice attached to the order, which was doubtless prepared by appellant's attorney. The notice was addressed "To All Whom It May Concern:" and to Evelyn Damon and Florence Blazek, guardian of her property. The time set for the hearing was May 13th. Appellant's attorney made verified return that he posted the notice on April 29, 1946, on the bulletin board at the front door of the courthouse. Appellant appeared at the hearing, both in person and with the attorney who was acting for him as guardian and as executor. Appellant testified at the hearing that he was both guardian of Damon's property and executor of his estate.

IV. One of the trial court's conclusions of law is that appellant in managing the affairs of his ward must act "under proper orders of the court or a judge thereof" (see section 668.9, Code, 1946, made applicable to such a guardianship as this by section 670.1), and that no order was made authorizing him to liquidate the $6,000 of series G bonds. Appellant reasons from this the trial court held he was required to procure such an order. In written argument appellant asserts as his final proposition that no such order was necessary. Perhaps we would be justified in passing the point because of the assertion of appellant's counsel in oral argument that the appeal presents only the question of jurisdiction of the lower court. We think, however, the proposition presents no reversible error. Perhaps a more accurate statement of the trial court's conclusion is that appellant's act in cashing the bonds without court authorization should not be approved.

Among other conclusions of law by the trial court are: Appellee's ward, Eva (or Evelyn) Damon, had a contract and property right in the series G bonds, based on contract with the

government; Frank Damon intended that Evelyn, should she survive him, should be the sole owner of the bonds; it was not Frank's intention that the bonds be liquidated; no valid reason is shown for liquidating the bonds—they were not due, were a good investment, and loss resulted from their liquidation; the liquidation of the bonds under the circumstances shown was an unlawful taking of the property rights and interests of Evelyn in the bonds, to her loss in the amount of $5,928. None of these conclusions is challenged. They are to be considered in connection with the court's conclusion regarding appellant's lack of authorization to cash the bonds.

It appears it was not necessary or advisable to liquidate these bonds. The ward was then past eighty-three years old. When he filed his inventory on August 7, 1945, appellant had on hand: in currency, gold, and silver, $2,550; $2,000 on bank deposit at one per cent; $1,000 on checking account; other government bonds payable to the ward individually totaling $21,200—$3,000 of these were paid in September 1945. The ward owned his home. Appellant collected interest and dividends in excess of $500 between the filing of his inventory and his final report on April 29, 1946 (more than $300 of this was received before January 1, 1946), aside from the $3,000 received in September 1945, as principal of the bonds called for payment at that time. His total expenditures during the guardianship were $1,819, aside from $6,000 invested on November 28, 1945, in other series G bonds.

Appellant had ample funds to meet any needs of the ward which were apt to arise without selling the bonds payable to his ward and Evelyn. The bonds were sold at a sacrifice—they netted only $5,928. They bore two and one-half per cent interest. The proceeds of the sale were not reinvested. After making all expenditures, appellant had cash on hand of $7,162 when he filed his final report.

On November 26, 1945, appellant filed a petition for authority to invest $6,000 of his ward's funds in other series G bonds and such authority was granted by court order. Two days later appellant purchased $6,000 of these bonds payable

to his ward individually. In December 1945 (the exact date does not appear), appellant cashed the $6,000 of bonds held in co-ownership. Neither appellee nor her ward knew of this until given notice of hearing on appellant's final report.

The will of Frank Damon bequeathed to his wife his home in the small town of Bellevue and a third of all other property, made bequests to third persons of $300, and left the rest of his estate to two sisters, one of whom is appellant's mother. Appellant's attorney witnessed the signing of the will and it is a permissible inference prepared it. The widow (appellee's ward) filed her election to take under Damon's will before she knew of the liquidation of the bonds held in co-ownership.

Appellant has offered no explanation of his liquidation of these bonds without court authorization. The only apparent explanation of his conduct is that he wanted to convert the co-ownership bonds into cash or other bonds payable to his ward individually so his mother and aunt, upon Damon's death, would receive two thirds of the proceeds and the co-owner only the remaining third. If the bonds had not been liquidated they would have become payable to the co-owner upon Damon's death. In re Estate of Murray, 236 Iowa 807, 20 N. W. 2d 49.

Section 668.9, Code, 1946, made applicable to such guardianships as this by section 670.1, provides that guardians *must* in all respects manage their wards' affairs "under proper orders of the court or a judge thereof." The liquidation of these bonds under the circumstances here was plainly an act of managing the ward's affairs. Appellant deliberately chose to cash the bonds, prematurely and unnecessarily, without court authorization. We are not prepared to hold the trial court erred in its refusal to approve such conduct. See, as tending to support our conclusion, Andrew v. Farmers Sav. Bk., 207 Iowa 394, 396, 223 N. W. 249; McCutchen v. Roush, 139 Iowa 351, 355, 356, 115 N. W. 903; Slusher v. Hammond, 94 Iowa 512, 517, 63 N. W. 185; Bates v. Dunham, 58 Iowa 308, 12 N. W. 309; annotation 108 A. L. R. 936, 942. See, also, In re Guardianship of Benson, 213 Iowa 492, 496, 239 N. W. 79, where we point out that a guardian who proceeds with the management of his ward's affairs without previous court authorization

580

does so at the risk the court may not afterward ratify or approve such action.

 This cause is not reviewable de novo here and we consider only the errors assigned. In re Estate of Smith, 228 Iowa 47, 49, 50, 289 N. W. 694; In re Estate of Sheeler, 226 Iowa 650, 658, 284 N. W. 799, and cases cited; In re Guardianship of Baldwin, 217 Iowa 279, 281, 251 N. W. 696; In re Guardianship of Roland, 212 Iowa 907, 911, 237 N. W. 349. We think the assigned errors present no grounds for reversal.—Affirmed.

OLIVER, C. J., and BLISS, HALE, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.