430 N.W.2d 408 (1988)
In the Matter of the CONSERVATORSHIP OF Lucy E. BRITTEN.
LUCY E. BRITTEN ESTATE, Appellant,
v.
Loretta GREINER, Appellee, and
Dorothy A. Peck, Conservator, Appellee.
No. 87-1471.
Supreme Court of Iowa.
October 19, 1988.
*409 Glenn M. Bradley, Sigourney, for appellant.
H. Michael Neary of Gerard & Neary, Sigourney, for appellee Dorothy A. Peck.
Allen A. Anderson of Spayde, White & Anderson, Oskaloosa, for appellee Loretta Greiner.
Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.
CARTER, Justice.
John Britten, executor of the estate of Lucy Britten, appeals from an order authorizing the conservator of Lucy Britten to make a payment of money from conservatorship funds after the death of the ward. The payment in question was made to one of the deceased ward's four children, Loretta Greiner. The appellant contends this order was erroneous because the authority of the conservator to act terminated upon the death of the ward. Based on the facts which are revealed from the record, we disagree with this contention and affirm the district court's order.
On February 28, 1975, on the voluntary petition of Lucy Britten, her daughter, Dorothy Peck, was appointed conservator to manage her property. The conservator subsequently continued the ward's practice of making gifts from the ward's assets to the four children of the ward, Dorothy Peck, Loretta Greiner, John Britten, and Raymond Britten.
For the stated purpose of avoiding family conflicts, each of the four children signed an agreement in 1982 providing that future gifts by the conservator could be made only with the consent of all four children and requiring such gifts to be in equal shares. In 1982, gifts in the sum of $10,000 were made to each of the four children. The record does not indicate that any additional gifts were made until 1985 when the present dispute arose.
In 1985, Dorothy, as conservator, made gifts of $10,000 to herself, John, and Raymond, omitting Loretta and acting without Loretta's consent. When the conservator filed her annual report for the year 1985, disclosing the nature of the gifts which had been made, Loretta filed an objection contending the gifts violated the family agreement.
On September 10, 1986, the district court upheld Loretta's objection, found that the gifts violated the family agreement, and ordered that the conservator correct this situation either by making an equal gift to Loretta or by retracting the gifts made to the other three children. It appears that, at the time the district court heard and determined this issue, none of the parties sought to draw any legal significance from a purported will executed by Lucy Britten on December 20, 1985. That will divides her property primarily between Dorothy, John, and Raymond, and excludes Loretta. On October 8, 1986, the conservator filed a motion to vacate the September 10 order. No ruling has ever been made on this motion. On November 22, 1986, Lucy Britten died. Her will was admitted to probate on January 5, 1987, and John Britten was appointed executor. Three months later, Dorothy *410 Peck filed her final report as conservator.
On June 22, 1987, prior to approval of the final report, Dorothy requested court approval to act in compliance with the court's order of September 10, 1986, by paying Loretta the sum of $10,000 plus accumulated interest in lieu of retracting the gifts from the other children. John Britten, acting as executor of Lucy Britten's estate, filed an objection to this request. He injected the issue of the ward's testamentary intent under the December 20, 1985, will. On September 30, 1987, the district court issued an order overruling this objection and approving the payment to Loretta Greiner. It is from this order that the present appeal has been taken.
The executor raises three issues on appeal. These are: (1) that some disposition of the conservator's motion to vacate judgment filed October 8, 1986, was required before proceeding with the issues presented on the conservator's June 22, 1987, application; (2) that the conservator had no power to make payments from the ward's assets following the death of the ward; and (3) that the release and settlement executed by the conservator was invalid because it was contrary to the ward's testamentary intent. We separately consider these issues.
I. Effect of Motion to Vacate September 10, 1986, Order Which was Never Ruled on by the District Court.
We first consider the executor's claim that the district court should not have acted to approve the $10,000 payment to Loretta before ruling on the conservator's motion to vacate the September 10, 1986, order. We believe this assertion must fail. The challenge to the September 10 order was launched by the conservator, alone, and was not joined in by the other parties adversely affected by that order. When the conservator later sought approval from the court to pay $10,000 plus interest to Loretta in accordance with one of the alternatives available under the September 10 order, she tacitly, if not expressly, abandoned or withdrew her challenge to the order's validity. That election was the conservator's alone to make and has removed any basis for other interested parties, including this appellant, to seek some relief as a result of the abandoned or withdrawn motion. See Walkley v. Clarke, 107 Iowa 451, 455, 78 N.W. 70, 72 (1899) (one appealing party may not rely on exceptions taken by coparty which are not asserted by that party on the appeal); 4 C.J.S. Appeal & Error § 348 (1937) (same).
II. Authority of Conservator to Make Payment in Compliance with Orders of the Court.
The next issue presented involves the executor's claim that the authority of the conservator to make payments from the ward's funds terminated upon the death of the ward. In support of this argument, it relies on our decision in In re Guardianship of Pappas, 174 N.W.2d 422 (Iowa 1970).
In the Pappas case, a claim against the ward was filed with the conservator based on transactions which antedated the opening of the conservatorship. Before the claim could be acted on by the conservator the ward died. The conservator requested that the claim not be allowed against the conservatorship but be pursued against the personal representative of the decedent's estate. The court so ordered. On appeal from this order, we stated:
The proper place for determining this claim following decedent's death was in the estate proceedings. Our statutes are clear and unambiguous in laying down that procedure. Quite obviously, the legislature did not intend that two courts, or two divisions of the same court, administer the same assets and process the same claims.
Id. at 424.
Notwithstanding the foregoing statement of legal principle, we are comfortable in upholding the district court's order in the present case. We are convinced that in a strict sense only those powers which are given a conservator to act without order of court under Iowa Code section 633.646 automatically terminate upon the death of the ward. Powers subject *411 to court approval continue thereafter as long as the required approval is in fact obtained. We decided in In re Guardianship of Damon, 238 Iowa 570, 574, 28 N.W.2d 48, 50 (1947), that the court sitting in probate is not deprived of jurisdiction to deal with the ward's estate as a result of the ward's death. If the court has jurisdiction to continue to deal with the ward's estate, we believe it also has jurisdiction to direct the actions of the conservator with respect to asset transfers. Orders made pursuant to that jurisdiction may not be successfully challenged based only on a claimed absence of authority of either the conservator or the court. Some substantive ground must be asserted.
Realistically, of course, many actions which a conservator may take during the life of the ward should not be approved after the ward's death. But an inflexible or mechanical approach to this issue is not required. Actions already approved in the conservatorship proceedings may be carried to conclusion if, in the court's sound discretion, it is in the interest of sound judicial administration to proceed in this manner rather than requiring the identical question to be redetermined in the decedent's estate proceedings. On point in this regard is the following observation of the Arizona court with respect to the guardians of property:
When a person is under guardianship both of the estate and person and subsequently dies, what portion of his estate is subject to disposal under the law fixing priorities for the estates of decedents? Is it the gross assets in the hands of the guardian at the time of death, or is it the net property left after the guardianship has been properly closed? We are of the opinion that the logical answer is that the estate of the decedent consists of whatever assets remain after the legal claims arising by virtue of the guardianship have been properly satisfied. If this were not true there would be endless confusion created by contests between guardians on the one hand and executors or administrators on the other. The guardian might have created an indebtedness which, according to the law, was a proper and prior claim against the estate of the incompetent, and yet, by the sudden death of his ward, such claim might be utterly defeated by proceedings in the estate of the decedent.
State v. Greenhaw, 50 Ariz. 436, 439-40, 72 P.2d 950, 951 (1937). We believe the approach suggested by the Arizona court is sound. Iowa Code section 633.678 (1985) provides:
Upon the termination of the conservatorship, all assets of the conservatorship shall be delivered, under direction of the court, to the person or persons entitled to them.

(Emphasis added.) For purposes of carrying out this statutory directive, the court may find in the proper circumstances that the persons entitled to these assets are someone other than the ward's personal representative. See Damon, 238 Iowa at 574, 28 N.W.2d at 50.
In the present case, the conservator had been granted authority in the court's order of September 10, 1986, to either make the challenged payment to Loretta or to retract the gifts made to the other three children. That order was a final decree in probate by reason of Iowa Code section 633.36 (1985). At that time, John Britten, as executor, was not a party to this order because the ward was still living and had no personal representative. He was bound by the order in his individual capacity by having appeared and objected thereto. It appears that the other interested parties were similarly bound by the order. John Britten's rights as executor are also limited by the order because entitlements to the ward's property which have been finally established against the conservator are binding upon the ward's successors in interest. See Iowa Code § 633.653.
Because the September 10 order carried strong issue preclusive connotations, the district court was justified in wrapping the matter up as part of the conservatorship accounting rather than permitting it to be carried forward into the estate proceedings. The conservator, after the death of the ward, retained the power to adhere to valid adjudications of the court rendered *412 before that death occurred. And the court continued to be empowered to approve the conservator's selection from the court-approved alternatives for resolving the gift dispute.
III. Whether Disposition is Invalid as Being Contrary to Expressed Testamentary Intent of the Ward.
Finally, we consider the executor's argument that the gift to Lucy should be declared invalid because it is contrary to the "expressed testamentary intent of the ward." This claim involves the provisions of the ward's December 20, 1985, will. As we have previously indicated, that will divided Lucy's property primarily between Dorothy, John, and Raymond, and excluded Loretta.
It is provided in Iowa Code section 633.644 that,
[u]pon receiving an instrument purporting to be the will of a living ward under the provisions of section 633.643, the court may open said will and read it. The court with or without notice, as it may determine, may enter such orders in the conservatorship as it deems advisable for the proper administration of the conservatorship in light of the expressed testamentary intent of the ward.
The executor asserts that the $10,000 to Loretta approved after the making of the December 20, 1985, will is contrary to the intent of this statute.
We believe it is a complete answer to this contention to recognize, as we must, that, pursuant to section 633.36, the September 10, 1986, order was a final decree adjudicating the validity of the $10,000 gift to Loretta. Although the issue of testamentary intent in light of the December 20, 1985, will apparently was not raised at the hearing which led to that determination, this does not affect the order's finality. Claims and other entitlements to the ward's property which have been finally established against the conservator are binding upon the ward's successors in interest by reason of Iowa Code section 633.653. That principle was recognized and applied in the district court's order of September 30, 1987, from which the present appeal was taken. We have considered all arguments advanced and find no basis for granting relief from that order.
AFFIRMED.