IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-108

Filing Date: August 14, 2012

Docket No. 30,972

IN RE THE PROTECTIVE PROCEEDINGS
FOR JAMES A. BORLAND, AN ADULT IN
NEED OF PROTECTION.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Beatrice J. Brickhouse, District Judge

Roepke Law Firm, LLC
Karl H. Roepke
Megan P. Duffy
Albuquerque, NM

for Appellants Amy Callis, Helen Kuntz, and Rhonda McDonald

Pregenzer Baysinger Wideman & Sale, P.C.
Marcy Baysinger
Albuquerque, NM

for Zia Trust, Inc.

Deborah Rupp Goncalves, P.C.
Deborah Rupp Goncalves
Albuquerque, NM

for Appellee Borland Heir Fred Fornoff, Jr.

Laurie A. Hedrich, P.A.
Laurie A. Hedrich
Albuquerque, NM

for Appellee Borland Heirs Sara B. Watt,
Virginia B. Fields, David W. Borland,
Carole B. Schafer, Jane E. Bennett,
Dianna B. Roberts, Mary C. Farr,
Charles Howell Carlson, Jacqueline H. Wasilewski,
Russell Howell, Daniel R. Howell,

1

Susan L. Pena, and Linda E. Monge

Hurley, Toevs, Styles, Hamblin & Panter, P.A.
Randolph Hamblin
Albuquerque, NM

Swaim & Finlayson, P.C.
David Finlayson
Bruce J. Puma, Jr.
Albuquerque, NM

for James A. Borland

**OPINION**

**WECHSLER, Judge.**

**{1}**    Appellants Amy Callis, individually and as trustee for the James A. Borland Revocable Trust, Helen Kuntz, and Rhonda McDonald (collectively the step-daughters) appeal from an order approving a final report and accounting, discharging the conservator, and terminating the protective proceeding.  The step-daughters argue that the district court erred in (1) closing the protective proceeding without deciding conservator Zia Trust, Inc.'s (Zia Trust) petition for instructions regarding whether it must transfer the protected person's assets to a trust executed by the protected person and (2) leaving the issue for the district court sitting in probate to decide upon the protected person's death.  In their view, not only did the district court in the protective proceeding have jurisdiction to decide the petition for instructions after the protected person's death under the Uniform Probate Code (the Probate Code), NMSA 1978, §§ 45-1-101 to -9A-13 (1975, as amended through 2011), the Probate Code compelled it to decide the petition for instructions.  We hold that the district court in the protective proceeding did not err by closing the protective proceeding without deciding the petition for instructions and leaving for the probate court the issue of whether to fund the trust upon the protected person's death. Accordingly, we affirm.

**BACKGROUND**

**{2}**    This appeal arises out of the district court's termination of the protective proceeding of James A. Borland (Borland) after Borland's death on June 26, 2010 at the age of eighty-seven.  Relevant to this appeal, Borland married Audrey Butler Borland (Butler) on April 10, 2006.  Butler died on October 11, 2009.  Shortly after Butler's death, one of Butler's daughters opened a protective proceeding by filing a petition for a temporary emergency appointment of guardian and conservator and permanent appointment of a guardian and conservator.  The district court appointed Zia Trust temporary conservator on October 20, 2009, and permanent conservator on December 18, 2009.

2

**{3}**     At the time that Zia Trust was acting as the temporary conservator for Borland, Zia Trust discovered an executed trust agreement entitled the "James A. Borland Revocable Trust" (the trust).  The trust provided that Borland was to be the primary beneficiary of the trust during his lifetime and that, upon his death, the remainder was to be distributed to Butler.  The trust further provided that, if Butler was to predecease Borland, the remainder would be distributed as follows: fifty-five percent to Frederick Fornoff, a cousin of Borland, and fifteen percent to each of the three step-daughters.

**{4}**     Zia Trust did not discover a schedule of assets or any document identifying the assets that Borland intended the trust to hold.  Zia Trust further did not identify any assets or property that Borland transferred to the trust, and the trust was apparently not funded prior to Borland's incapacity.  Zia Trust also found an unexecuted pour-over will that purported to transfer Borland's probate assets to the trust upon Borland's death.  Shortly after the district court appointed Zia Trust the permanent conservator, one of the step-daughters, Amy Callis, made several demands that Zia Trust transfer Borland's assets and property to fund the trust.

**{5}**     Because Zia Trust was unable to determine the validity of the trust and the property that Borland intended to place in the trust, Zia Trust filed a petition for instructions with the district court regarding whether it should transfer Borland's assets to the trust.  Zia Trust provided notice to the step-daughters, as remainder beneficiaries of the trust, and Borland's intestate heirs, who would inherit any probate assets not transferred into the trust.  Before all the interested parties responded to the petition for instructions and before the district court held a hearing and issued a decision, Borland died, leaving an estate valued at approximately seven million dollars.

**{6}**     One of Borland's statutory intestate heirs instituted a separate probate proceeding (the probate proceeding) for Borland in the district court (the probate court) on July 2, 2010. The intestate heirs and the step-daughters stipulated to the appointment of Zia Trust as the special administrator and personal representative of Borland's estate.  Meanwhile, the district court in the protective proceeding held a hearing concerning a motion filed by Borland's court-appointed independent counsel. During the hearing, the district court directed Zia Trust to file its final conservatorship report for the purpose of closing the protective proceeding. Subsequently, on July 23, 2010, Zia Trust filed a motion to approve its final report and accounting, discharge it as conservator, and terminate the protective proceeding.  The step-daughters filed a response to the motion on September 21, 2010, opposing the termination of the protective proceeding until the district court decided the petition for instructions on whether Zia Trust must transfer Borland's assets to the trust and that Zia Trust cannot transfer assets to the probate court without breaching its duties as conservator until the district court in the protective proceeding decided which assets belonged to the trust.  The district court ruled against the step-daughters and entered an order approving the final report and accounting, discharging Zia Trust as the conservator, and terminating the protective proceeding on November 3, 2010. That order is the subject of this appeal.

3

**{7}** On appeal, the step-daughters argue that the district court erred in closing the protective proceeding without deciding the pending issue of whether Zia Trust must fund the trust. They contend that (1) the protective proceeding is the proper forum to resolve the dispute on the funding of the trust, and (2) the district court in the protective proceeding had jurisdiction after Borland's death to decide the pending, disputed factual issues regarding the trust. Alternatively, the step-daughters argue that the district court's final order closing the protective proceeding contains language that would preclude the step-daughters from litigating the issue of whether to fund the trust in the probate proceeding, and they ask this Court to remand this case to the district court to amend its final order to include a statement that clarifies the issues left undecided in the protective proceeding.

**PROPER FORUM FOR DETERMINING WHETHER TO FUND THE TRUST**

**{8}** We first address the step-daughters' argument that the district court erred in closing the protective proceeding without deciding the pending issue of whether Zia Trust must transfer Borland's assets to the trust. The step-daughters contend that the portions of the Probate Code governing conservatorships compelled the district court in the protective proceeding, not the probate court, to decide disputed factual issues regarding a protected person's assets before the assets were turned over to the probate court. Particularly, according to the step-daughters, the district court in the protective proceeding is the correct court to resolve the issue under the statutory scheme governing conservatorship and probate proceedings because (1) a conservator is required to act on behalf of the protected person and fulfill the protected person's estate plan, (2) the decision will determine the proper recipients of the estate, and (3) the decision will impact the conservator's final accounting. This issue requires statutory construction of various provisions of the Probate Code, which is an issue of law that we review de novo. *See Estate of Nauert v. Morgan-Nauert*, 2012-NMCA-037, ¶ 8, 274 P.3d 799.

**{9}** When engaging in statutory construction, our guiding principle is to determine and give effect to the intent of the Legislature. *Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453. In discerning the Legislature's intent, we first look to the "plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *City of Albuquerque v. Montoya*, 2012-NMSC-007, ¶ 12, 274 P.3d 108 (internal quotation marks and citation omitted). "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Id.* (internal quotation marks and citation omitted).

**{10}** We begin by examining the distinctive purposes of a protective proceeding as opposed to a probate proceeding. Article five of the Probate Code governs protective proceedings. Section 45-5-402(B) describes the exclusive jurisdiction that a court in a protective proceeding may exercise through a conservator and generally limits the duties to the management, expenditure, and distribution of an estate for the use of a protected person

4

and his or her dependents. Section 45-5-402.1(A) directs that a district court in a protective proceeding "shall exercise the authority conferred . . . to encourage the development of maximum self-reliance and independence of a protected person and make protective orders only to the extent necessitated by the protected person's mental and adaptive limitations and other conditions warranting the procedure." Thus, a protective proceeding is generally limited to the management, expenditure, and distribution of a protected person's property in order to maximize self-reliance and interdependence of the protective person. On the other hand, relevant to this appeal, the central purpose of a probate proceeding is "to discover and make effective the intent of a decedent in distribution of the decedent's property" and "to promote a speedy and efficient system for the settlement and distribution of the estate of the decedent[.]" Section 45-1-102(B)(2), (3).

{11} Considering the purposes of the respective proceedings, the district court in the protective proceeding did not err by determining that the probate court should decide the issue of whether to transfer Borland's assets to the trust. In the petition for instructions, Zia Trust noted that, in addition to the executed trust document, it found a pour-over will providing for the transfer of Borland's probate assets to the trust upon Borland's death. Once Borland died, the question of whether to fund the trust and what effect, if any, to give to the pour-over will is largely a question of Borland's testamentary intent for the distribution of his property rather than a question regarding the management, expenditure, and distribution of Borland's assets for Borland's use during his lifetime. Such a determination is appropriate for the probate court given the probate court's task of "discover[ing] and mak[ing] effective the intent of a decedent in distribution of the decedent's property[.]" Section 45-1-102(B)(2).

{12} The requirements for notice in the Probate Code for formal probate proceedings support this conclusion. The Probate Code defines formal proceedings as "proceedings conducted before a district [court] with notice to interested persons[.]" Section 45-1-201(A)(19). Interested persons "includes heirs . . . and any others having a property right in or claim against a trust estate or the estate of a decedent[.]" Section 45-1-201(A)(26). Further, Section 45-3-403(B) provides that "[n]otice shall be given to . . . heirs of the decedent (who would have taken had the decedent died intestate) [and i]n addition, the petitioner shall give notice by publication to all unknown persons and to all known persons whose addresses are unknown who have any interest in the matters being litigated." As we have discussed, the pending issue of whether to fund the trust and give effect to the pour-over will is largely a question of testamentary intent and therefore is appropriate for formal probate. *See* § 45-3-401(A) ("A formal testacy proceeding is litigation to determine whether a decedent left a valid will."). The district court in the protective proceeding therefore was justified in leaving the issue for the probate court in the formal probate proceeding, where all interested parties are required to receive notice.

{13} The step-daughters point to several provisions in the Probate Code that they argue compelled the district court in the protective proceeding to determine whether Zia Trust had to fund the trust. Section 45-5-402.1(B)(3)(e) allows a conservator to "create revocable or

irrevocable trusts of property of the estate which may extend beyond the disability or life of the person[.]" Section 45-5-427 provides that "[i]n investing the estate, and in selecting assets of the estate for distribution . . . and in exercising any other powers vested in them, the conservator or the court should take into account any known estate plan of the protected person, including his will [and] any revocable trust of which he is settlor[.]" However, neither Section 45-5-402.1(B)(3)(e) nor Section 45-5-427 compels a district court in a protective proceeding to determine pending issues related to a protected person's trust or an estate plan after the protected person's death. These statutes only empower the conservator to act in particular ways while managing the protected person's affairs during the protected person's lifetime.

**{14}** The cases on which the step-daughters rely are very fact specific. Indeed, our conclusion in this case, like the results in other cases, depends on the particular facts before us. For instance, the step-daughters cite *In re Estate of Reinwald* (*Reinwald*), 834 P.2d 1317, 1319 (Idaho 1992), for the proposition that "the protective proceeding is . . . a proper forum to address" whether a protected person's estate plan is valid after a protected person's death. In *Reinwald*, in a protective proceeding under a provision identical to Section 45-5-427, the protected person's nephew filed an objection to the conservator's final accounting in a dispute over a certificate of deposit (CD) purchased by the protected person that originally contained a payable- on-death provision to the nephew. *Reinwald*, 834 P.2d at 1317-18. The nephew alleged that the conservator's failure to (1) not include an identical payable-on-death provision when renewing the CD and (2) not pay him the proceeds of the CD violated the provision of the Idaho Probate Code that directs the conservator to take into account and preserve a known estate plan of the protected person. *Id.* at 1318. Thus, in the protective proceeding, the court addressed the issue of whether the payable-on- death provision in the CD was an estate plan that the conservator was required to account and preserve. *Id.* The court in *Reinwald* held that "[k]nowledge of an estate plan valid and complete on its face triggers the duty to take into account and preserve; the statute requires nothing more, nothing less" and that the payable-on-death provision in the CD was an estate plan that the conservator was required to take into account and preserve. *Id.* at 1320.

**{15}** However, *Reinwald* presents a different set of factual circumstances and is therefore inapplicable to this case. In this case, Zia Trust was not sure whether Borland had a valid estate plan, and to its knowledge, Borland only had a revocable, unfunded trust without an executed pour-over will. Zia Trust fulfilled its obligations under Section 45-5-427 to preserve any estate plan that the trust document and the unexecuted pour-over will may have created when Borland was alive by petitioning the district court for instructions on whether to transfer assets to the trust. Once Borland died, the probate court was in a better position to determine testamentary issues relating to the trust and the pour-over will. *Reinwald* does not address issues regarding the interplay between the court in a protective proceeding and the probate court in a situation in which a protected person dies while issues regarding the protected person's assets are pending and does not answer the question of which court must decide the issue of whether Zia Trust must fund the trust after Borland's death. *See State v. Gamlen*, 2009-NMCA-073, ¶ 15, 146 N.M. 668, 213 P.3d 818 ("It is well established that

6

cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{16}    The step-daughters additionally argue that the district court's conclusion is incorrect because the decision of whether to transfer assets to the trust also affects the delivery of the conservatorship estate. Generally, under the Probate Code:

> [i]f a protected person dies, the conservator shall deliver to the court for safekeeping any will of the deceased protected person which may have come into his possession, inform the personal representative or a beneficiary named therein that he has done so, and retain the estate for delivery to a duly appointed personal representative of the decedent or other persons entitled thereto.

Section 45-5-425(E). The step-daughters contend that by using the phrase "or other persons entitled thereto," the Legislature contemplated that, in some instances, the conservator will transfer some or all of the protected person's assets to someone other than the personal representative in the probate proceeding. In their view, a trustee is an "other person[] entitled" to delivery under this statute, and, therefore, Section 45-5-425(E) accounts for situations, such as in this case, in which the funding of a trust is at issue when a protected person dies. However, we do not read Section 45-5-425(E) as compelling the district court in the protective proceeding to decide the funding of the trust in this case. Simply because our Legislature contemplated that, in some circumstances, the conservator will transfer assets to someone other than the personal representative in the probate proceeding upon the death of the protected person, it does not follow that the district court in the protective proceeding must decide pending factual issues related to the protected person's assets at the protected person's death, especially if the issues are better left to the probate court.

{17}    Next, the step-daughters rely on *In re Conservatorship of Britten* (*Britten*), 430 N.W.2d 408 (Iowa 1988), for the proposition that "it would be procedurally improper to transfer [the potential trust] assets to the probate court for disposition [because] the probate estate is only entitled to assets that remain after the legal claims arising by virtue of the conservatorship have been properly satisfied[.]" (alteration and internal quotation marks omitted). In *Britten*, the conservator, the daughter of the protected person, made payments to herself and two other siblings as gifts from the protected person's estate. *Id.* at 409. She omitted making a similar gift to another sibling. *Id.* The district court upheld an objection by the omitted sibling and ordered the conservator to either make an equal gift to the omitted sibling or retract the gifts to herself and the other two siblings. *Id.* Before the conservator complied with the order, the protected person died. *Id.* Prior to the approval of the conservator's final accounting, the conservator requested approval to comply with the order and make payment on the earlier order. *Id.* at 410. The personal representative of the estate in the probate proceeding objected, arguing that the conservator had no power to make payment from the protected person's assets following the death of the protected person. *Id.* The Iowa Supreme Court held that the conservator retained the authority to make the

7

payment. *Id.* at 411-12. The Iowa Supreme Court stated that "[a]ctions already approved in the conservatorship proceeding[] may be carried to conclusion if, in the court's sound discretion, it is in the interest of sound judicial administration to proceed in this manner rather than requiring the identical question to be redetermined in the decedent's estate proceeding[]." *Id.* at 411. In so holding, the Iowa Supreme Court distinguished *In re Guardianship of Pappas* (*Pappas*), 174 N.W.2d 422, 423, 426 (Iowa 1970), which held that a claim against a protected person's estate is "properly triable in the estate proceedings rather than the guardianship" in a situation in which the protected person died before the court in the guardianship proceeding made a decision on the validity of the claim.

**{18}** However, *Britten* also presents a different factual circumstance and therefore does not govern this case. Crucial to *Britten* is the district court's order in the protective proceeding of payment *before* the death of the protected person. In this case, the district court in the protective proceeding had not decided whether the conservator should fund the trust before Borland's death, and the issue was still pending. Our case is analogous to *Pappas*, in which the Iowa Supreme Court stated that a claim pending but not decided before the death of the protected person is more properly triable in the estate proceedings rather than in the guardianship. 174 N.W.2d at 423, 426.

**{19}** Lastly, the step-daughters argue that the district court was compelled to decide the issue regarding the trust because "the result will impact the final accounting of the conservatorship estate." They contend that "[i]t would . . . be improper for [Zia Trust] to include trust assets in the final accounting [of the] conservatorship estate." Although we acknowledge that the final accounting would be different depending on whether some or all of Borland's assets were placed in the trust, the accounting ultimately has no effect on the distribution of the assets. An accounting for the purposes of a protective proceeding is a report that "shall include information concerning the progress and condition of the person under conservatorship, a report on the manner in which the conservator carried out his powers and fulfilled his duties and the conservator's opinion regarding the continued need for conservatorship." Section 45-5-409(A). The approved final accounting is simply a snapshot of Borland's assets and a summary of the financial decisions made by Zia Trust until the time of Borland's death. Nothing about the acceptance of the accounting precludes the probate court from funding the trust and giving effect to the pour-over will if the probate court deems that the documents are valid and properly executed. The effect on the final accounting does not compel the district court in the protective proceeding to determine the pending issue of whether to fund the trust.

**PRECLUSIVE EFFECT**

**{20}** The step-daughters state that, in its present form, the district court's final order closing the protective proceeding may have a preclusive effect on their ability to address whether the trust should be funded in the probate court. The step-daughters further contend the final order appears to "address and deny [their] claims on the merits, even though the merits have never been reached." Particularly, the step-daughters point to language in the

8

final order overruling "all objections" to Zia Trust's motion to approve the final report and accounting, discharge conservator, terminate protective proceeding, and granting the motion. They request that this Court remand to the district court in the protective proceeding to resolve the underlying issues or direct the district court to amend its final order to clarify the undecided issues. However, in their answer, petition, and objections to Zia Trust's motion to approve the final accounting, the step-daughters objected only to the extent that the district court had not decided the pending issue regarding transferring assets to the trust and requested that the district court set an evidentiary hearing to decide the issue before closing the protective proceeding. Read in the context of the arguments made and relief requested by the step-daughters, the district court's final order cannot be construed as deciding the issue of whether to transfer assets to the trust on the merits. Therefore, a remand for an order clarifying undecided issues is unnecessary. The record in the protective proceeding is clear that whether the trust is to be funded is an issue still to be decided by the probate court.

## CONCLUSION

{21}     We hold that the district court in the protective proceeding did not err by closing the protective proceeding without deciding the petition for instructions and leaving for the probate court the issue of whether to fund the trust upon the protected person's death. Accordingly, we affirm.

{22}    **IT IS SO ORDERED.**

 

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *In Re the Protective Proceedings for Borland*, No. 30,972**

**JURISDICTION**
District Court

**WILLS, TRUSTS, AND PROBATE**
Administration of Estate
Distribution
Heir
Trusts, General