IN RE TRUSTEESHIP OF CHARLES BOYD et al.

No. 45823.

JUNE 16, 1942.

Morrison & Morrison, for Edmund D. Morrison, guardian of Charles Boyd, minor, appellant.

Schuyler W. Livingston, for Albert Greiner, trustee, appellee.

HALE, J.— John Greiner died testate December 11, 1936, leaving among other heirs and devisees Elvina Boyd, his daughter, who died June 29, 1938, and whose husband died shortly afterward. Elvina Boyd left as her only child Charles Boyd, now 12 years of age. John Greiner left a will of date October 26, 1931, to which there was a codicil dated April 10, 1935, and a second codicil dated April 15, 1936. The will and codicils were admitted to probate in Washington county, December 21, 1936. Among others, there was a provision in the will made for the daughter Elvina Boyd, by items 4 and 8

and the residuary provision item 10, the balance of the estate being given to others. Items 4 and 8 were replaced by items 2 and 3 of the first codicil, which provided:

"2. That in lieu of Item 4 of my said last will and testament, I substitute the following:

I direct that the provision made for my daughter Elvina Boyd, and her child Charles Boyd, during her life time, in Item 3 hereof and in Item 10 of my said last Will and testament, and also the provision made in said item 3 hereof after the death of said Elvina Boyd for the benefit of her said child until he attains the age of 40 years, shall be in trust, and I appoint my son Albert Greiner to act as Trustee thereof, and specifically direct that the said Trustee in the administration of said trust shall first reimburse my estate for all disbursements made by me in the support, care and maintenance of her said child from the date hereof until my death, and from and after my death shall furnish and provide from the net income thereof adequate care, comfort and support for my said daughter Elvina Boyd and her said child during her life time, and the same for her said child after her death and during the continuance of the trust.

"3. That in lieu of Item 8 of my said last Will and testament, I substitute the following:

I give, devise and bequeath to my daughter Elvina Boyd, and to her child Charles Boyd, subject to such disbursements as paid by me from the date hereof, until my death, for the support, care and maintenance of her said child, the right to the use and enjoyment for and during the term of her natural life time of the South east quarter of section three, in township 76 north, range 10 west of the 5th P. M. Keokuk County, Iowa, and at the death of my said daughter Elvina, I direct that such use and income of said real estate shall go to her said child until he has attained the age of 40 years, then to her said child absolutely; provided that if her said child should die without issue before he has attained the age of 40 years, then I direct that all the property in this item devised shall go outright to my lawful heirs; if, however, her said child attains the age of 40 years and at that time has a living heir or heirs of his body, then I direct that the property in this item devised shall go outright to the heirs of his body."

Item 10 of the original will, after providing for certain specific bequests and devises, gave all the remainder of his property in equal shares to his legal heirs per stirpes as they may exist at the time of distribution.

The only change made by the second codicil so far as it affects the parties to this proceeding was the revocation of the appointment of John H. Greiner as coexecutor and the substitution of E. J. Harmeier in his place. E. J. Harmeier never qualified as trustee and died shortly after his appointment, so that there was left as the only trustee the person named in the will and the second codicil, Albert Greiner. The trustee filed no inventory, but on February 5, 1940, he filed his first annual report wherein he stated that he had received from the executors of the John Greiner estate, as principal assets, the sum of $2,526.55 in cash in March 1939. Various reports were filed, the last of which was filed March 26, 1941, showing that the trustee had on hand as principal assets $2,529.12 and income received $2,855.74, of which had been paid out $368.70, leaving a balance of income on hand $2,487.04.

On May 20, 1941, Albert Greiner, trustee, filed his sworn application for order for authority to make repairs, showing that he had additional income in the shape of 1,700 bushels of corn. The application stated that the dwelling house of four rooms and a hall upstairs, is 26 feet wide and 55 feet long, including a 7-foot porch 39 feet long which was in bad repair, and asked that such porch be removed, except 10 feet; and also stated that the siding was in a very bad condition and it would be cheaper to cover it with asbestos siding. The trustee stated that the house was built 50 years or more ago; that the windows are very long, the frames and sashes in very bad condition, and in his opinion the best thing to do was to put in new windows, window frames, weather strips and screens, and reduce the size of said windows materially; and he asked further to lay a new floor downstairs, and stated that some of the rooms needed replastering, since the old plastering cannot be repaired. There were other smaller repairs that should be made. He gave an estimate of the total cost of such repairs to be $1,457.60, and asked for an order directing such repairs.

Edmund D. Morrison, guardian of the person and property

of Charles Boyd, minor, beneficiary, filed a resistance to the application of the trustee reciting that his ward is the beneficiary of the right to the use and enjoyment and income of all of the trust property until he attains the age of 40 years. He states that the dwelling house on the trust real estate is in need of painting and perhaps some other repairs, that such improvements asked are in the nature of capital investments and should not be paid or authorized made from the minor's income. He recites that the proposed repairs are improvident in that they propose the entire rebuilding of a 50-year-old farmhouse; recites the proposed changes and repairs; that said expenditures are wholly unjustified and unwarranted; that the building could be painted and put in adequate and proper repair as a rental farm property for not to exceed the sum of $300; that the proposed expenditure would be inequitable to said minor and profligate waste of this trust estate; that the trustee is adversely interested since he is a contingent remainderman; that the income of the minor is needed for his support, care, and education, and encroachments thereon for other than ordinary repairs are grossly inequitable.

On June 6, 1941, the court in probate entered an order authorizing the expenditure as asked and directing the trustee to make the recommended repairs and improvements. The order recites that the said Albert Greiner, trustee, and his attorney, S. W. Livingston, appeared in person in open court, and the said Edmund D. Morrison, guardian, appeared in person in open court.

"Thereupon said cause proceeded to trial and hearing in open Court and neither party having requested leave to introduce any formal testimony, but at said trial counsel for the Trustee having made his professional statement to the Court and the Guardian, the said Edmund D. Morrison, Sr., having made his professional statement to the Court, and thereafter the Trustee having been interrogated by the Court in reference to the matters involved in his said application and the resistance thereto, and at the conclusion thereof both parties having elected to submit the matter to the Court for decision upon their statements so made in open Court, and the Court being now fully advised in the premises, finds, decrees and orders that the allegations of

Albert Greiner, Trustee, as aforesaid, contained in his application above mentioned, are true, and the equities are with the said Albert Greiner, Trustee * * *.''

I. The guardian of Charles Boyd appeals from the ruling of the district probate court and claims that the court erred in ordering any funds of this trust invested or expended in the proposed improvements on the farm dwelling for want of both allegation and any evidence to sustain it. In support of this contention he cites In re Trusteeship of Bartholomew, 207 Iowa 109, 222 N. W. 356. The holding in this case is that the burden of proof is upon the trustee to establish proper care in making an investment, and this holding may not be denied. But we think the guardian is in error in claiming that there was no evidence of any kind that would sustain the trustee in his application. An examination of the resistance to such application discloses the fact that there was not a direct denial of the condition of the building. He urges that the expenditures are unjustified and unwarranted and that the amount asked is too great and should not be paid from the income. But as to the principal facts stated in the application of the trustee there is not an express denial. For instance, he does not deny the condition of the house nor that it would be cheaper to cover the siding with asbestos siding, nor that new windows, new floors, and new plastering are necessary. While, under the provisions of Code section 11116, the guardian must deny prejudicial allegations of the petition, yet the facts as to the condition of the premises no doubt could not be successfully disputed. Ordinarily, under such a pleading, which does not controvert the facts alleged in the application, the allegations thereof not denied would necessarily be admitted. Section 11201, Code of 1939. And see the following cases cited by appellee: Kent v. Muscatine, N. & S. Ry. Co., 115 Iowa 383, 387, 388, 88 N. W. 935; Singer Mfg. Co. v. Billings, 39 Iowa 347; Redhead v. Iowa Nat. Bk., 127 Iowa 572, 574, 103 N. W. 796; Bloomer v. Glendy, 70 Iowa 757, 30 N. W. 486. A serious objection, however, to the guardian's contention is that there was evidence, as shown by the court's order for the application. The order recites, and it is not controverted, that neither party asked leave to introduce any testimony, but both counsel for the trustee

and the guardian, who is an attorney, made their professional statements to the court and the trustee was examined by the court. Furthermore, in addition to his sworn statement, the trustee himself testified to the court, as shown by the court record, and there were the records of the court in relation to the trust and the guardianship of which the court could take judicial notice, and "both parties elected to submit the matter to the court for decision upon their statements so made in open court." Both the guardian and the trustee were officers of the court, as were the attorneys who made their professional statements, and this proceeding was not an adversary proceeding. In re Trusteeship of Lawson, 215 Iowa 752, 757, 244 N. W. 739, 88 A. L. R. 316; Hagy v. Avery, 69 Iowa 434, 29 N. W. 409; In re Estate of Harsh, 207 Iowa 84, 87, 218 N. W. 537; Kreamer v. Wendel, 204 Iowa 20, 24, 214 N. W. 712. See, also, 65 C. J. 713. The guardian cites various cases which hold that where there is no competent evidence in a probate or law action tried to the court, the court may set aside the holding of such probate or district court. But such cases do not apply to the circumstances of this case as shown by the record. It is a familiar rule, often announced heretofore, that where a decision is made by the lower court and there is evidence to sustain it, such ruling or order will have the force and effect of a jury verdict.

II. The guardian further asserts that the court erred in ordering investment of any of the income of this trust in permanent improvements of the trust property. This objection is made on the theory that the will of John Greiner gave the trustee no authority to make investments in improvements on, or in, real estate, and vested in Charles Boyd for years, viz., until he reaches the age of 40 years, sole and absolute right to all income of this trust. The guardian asserts that the trustee cannot make improvements unless clearly authorized so to do by the instrument creating the trust, but an examination of the facts disclosed by the application indicates that the work and changes proposed to be made were more in the nature of repairs than improvements. The condition of the house, which is not denied by the objection, indicates such depreciation as to make it of little value as a farmhouse on a 160-acre farm. The dwelling house was not a large one; it had been built about 50 years before, and, from the un-

controverted facts, it was in a run-down condition. The guardian argues that the repairs on the tenant house would add little, if anything, to the rental value of the entire premises, but it needs no evidence or argument to indicate that a house which is not fitted for living purposes would not attract the best and most desirable tenants. One who is equipped to rent a 160-acre farm would hesitate to rent such premises without adequate housing facilities. To secure good tenants, there must necessarily be proper facilities both for living and for farming, and a dilapidated and undesirable dwelling will not attract such tenants. The court was justified in directing the trustee to put the premises in such shape as would be suitable for a good class of tenants, and this would result in an increased income, or at least would prevent a diminution of revenues from the place. The objection of the guardian that this expense should not be paid out of the income we think is without merit. The suggestion is made that the trustee is a possible beneficiary under the provisions of item 10 of the will, but his future ownership of part of the trust property can only be based on the possibility that the beneficiary, now 12 years of age, will neither live until he is 40 nor leave heirs. This is not a strong basis on which to support an allegation of interest on the part of the trustee. The normal life expectancy of a boy of the age of the beneficiary here would be about 47 years. If he lives, the trust has still 28 years to continue. It is only a question of whether the repairs should be made piecemeal, which undoubtedly the trustee has a right to do, or whether they are made now, since they must be made at some time during the 28 years of the trust, which we cannot assume will be terminated prior to that time. During that period, the benefits to be derived from such repairs will accrue to the ward, and failure to make such repairs would only result in loss. The longer the making of such necessary repairs is postponed, the greater will be the expense when made. It is a possibility that the beneficiary may not survive to take the title to the property, but the trustee should protect the trust property from further deterioration and do what now appears to us to be for the best interest not only of the trust estate but of the beneficiary himself. Since we hold that the matters alleged in the application are necessary repairs, we need not consider at this time the question

whether or not, under the terms of paragraphs 2 and 3 of the codicil of the will, the ward is entitled to all of the net receipts from the farm or only to that part of the net income sufficient to provide adequate care, comfort, and support for Charles Boyd during the continuance of the trust, as provided in section 2 of said codicil. In either event we are satisfied that the best interests of all concerned would be promoted by the repairs authorized and approved by the court.

As to the expenditures for repairs, we think that the general rule laid down in 65 C. J. 712 will apply here. There it is said that in determining what repairs are necessary, consideration may be taken of the probable duration of the trust, and the fact that the property is to be leased. And even as to extensive repairs and improvements, the general rule has been relaxed to the effect that, where the trustee's action is clearly beneficial to the trust estate, the trustee, under his broad and discretionary powers in regard to managing and preserving the trust property, may make repairs and improvements of a more or less extensive and permanent nature, such as the construction and erection of buildings, as where the present buildings have, through fire or otherwise, been converted from a source of revenue into a liability. It is further said that expenditures for repairs and improvements are also properly made when sanctioned by the court, or when they are of such a nature that the court would have authorized them. See, also, Restatement of the Law (Trusts) 493, chapter 7, section 188, division e.

This disposition of the appeal renders it unnecessary to pass upon the motion to strike affidavit of D. W. Yoder.

We think the order of the court was proper under the facts. We must hold that the application was properly authorized and the court was right in denying the objections.—Affirmed.

All JUSTICES concur.