**In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Bessie R. JORDAN.**

**Gail Griffith Lovell, Administrator of the Estate of Bessie R. Jordan, Deceased, Appellant,**

v.

**George Remer and Garden Farms, Inc., Appellee.**

**No. 98–0410.**

Supreme Court of Iowa.

Sept. 7, 2000.

David Swinton of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellant.

Dee Ann Wunschel of Wunschel Law Firm, P.C., Carroll, and George Remer, Battle Creek, for appellees.

CARTER, Justice.

Gail Griffith Lovell, the administrator of the estate of Bessie R. Jordan, appeals from an adverse ruling in her action to overturn the sale of Bessie's interest in a 423–acre farm while Bessie was incompetent and under conservatorship. The defendants in the action are the conservator, George Remer (Remer) and Garden Farms, Inc. (GFI), a corporation controlled by Remer. Remer and GFI cross-appeal, challenging money judgments that the dis-

trict court imposed against them for other transactions involving the ward's affairs.

After reviewing the record and considering the arguments presented, we reverse the portion of the district court's decree upholding the land sale, affirm certain other portions thereof, and remand the case for further orders that are required to perfect, as nearly as practicable, the restoration of the status quo.

Bessie Jordan was a retired school teacher who resided in rural Ida County. Her primary asset was an interest in a 423–acre family farm of which she held a 58.33% interest in fee simple and a 10.42% interest as a life tenant. Bessie's sister, Lucille, owned a 31.25% interest in the farm. Bessie and Lucille operated the farm as a partnership referred to by the parties as the Jordan farm partnership. Remer, who was Lucille's son, acted as their farm manager. By 1985 Bessie was no longer mentally competent to handle her own affairs, and Remer was appointed to act as her guardian and conservator. Upon Lucille's death in February 1987, Bessie's fee simple interest was increased to 68.75% as a result of a joint tenancy interest with Lucille in a portion of the farm. When her 10.42% life estate interest is considered, this gave her a total beneficial interest in the property of 79.17%.

Prior to March 1, 1987, the Jordan farm partnership had leased the land on various crop share and cash arrangements. In February 1987, Lucille's death caused a dissolution of the partnership. At about that time, Remer, a licensed attorney, formed the GFI Corporation. Although his wife, Carol, was shown as the sole shareholder of this corporation, the district court found that it was at all times under Remer's control. Our review of the record convinces us that this conclusion was correct. On March 26, 1987, Remer, acting as farm manager for Bessie, leased her interest and the other fractional interests in the farm to GFI. The lease called for a flat annual rental of $26,000 per year of which Bessie's share was $20,584.

In October 1987 Remer, as conservator, arranged for Bessie to lease two new grain bins with an option to buy.[1] He obtained court approval for this transaction by stating in his application that

the [ward's] estate herein must continue to be involved in the Government programs and presently there is on hand in the estate herein corn under seal and loan to the CCC for which the estate is collecting rental. This additional storage which is necessary is required so the estate can meet its obligations under additional sealing of corn and beans....

In August 1988 Remer sought court approval for the sale of Bessie's 68.75% fee simple interest in the 423–acre farm to GFI. His application revealed that the proposed purchaser was a corporation owned by his wife Carol. The reasons given for proposing this sale of Bessie's property were as follows:

The sale is in the best interest of the estate herein as such proceeds are needed for the care of the ward and the proceeds receivable by the estate will be in excess of the rentals received annually, thus assuring the ward cash flow to meet ongoing needs.

. . . .

Presently, the ward's annual income is insufficient to meet the needs of the ward's expenses. This farm sale would increase the annual amount received by the ward to a level sufficient to pay the care expenses of the ward and eliminate the necessity of the ward to participate in payment of the ongoing farm expenses and debts.

Prior to submitting the matter for court approval, Remer obtained two appraisals from qualified farm appraisers. One ap-

---

**1.** The application for approval of this lease purported to obligate Bessie for the entire interest in the bins being leased. Elsewhere in the record, however, it is indicated that her interest may only have been in proportion to her fractional interest in the farm.

praisal valued Bessie's interest at $525 per acre and the other at $575 per acre. Remer's application to the probate court proposed to sell Bessie's interest in the farm for $575 per acre adjusted to recognize her fractional interest. The court granted Remer's application to sell Bessie's interest in the farm on September 8, 1988. The total purchase price was to be $150,313 payable in installment terms discussed later in this opinion. Because the original contract proposal understated Bessie's fractional interest in the farm, a revised contract was prepared and approved by the court calling for a purchase price of $167,217. The two orders approving the sale of Bessie's farm interest to GFI were entered without notice to Bessie or anyone acting in her behalf other than the conservator applicant.[2]

Bessie died on October 9, 1992. Remer's wife, Carol, was appointed administrator of her estate and Remer as the attorney for the estate. In May 1994 the current administrator, Gail Lovell, and others filed a petition for Carol's removal as personal representative. Carol then resigned as administrator, and Remer resigned as attorney for the estate. Lovell was then appointed as administrator. In June 1996 she filed an action to set aside the sale of the farm to GFI on the basis that it was the result of Remer's self-dealing and had not been in Bessie's best interest. In addition, the administrator lodged other complaints concerning the administration of the ward's assets.

After hearing evidence, the district court declined to set aside the sale. The court found that based on the evidence presented the price paid by GFI was fair. It further concluded that, because Bessie, who was in a nursing home, needed an assured source of cash assets to meet the recurring and mounting costs of her care, the sale was in her best interest.

On the other complaints, the court found that Remer had not breached a fiduciary duty in failing to liquidate a walnut grove on the farm prior to its sale to GFI but concluded that he had (1) improperly imposed the grain bin expense on Bessie; (2) improperly obtained farm management fees for services that did not benefit Bessie; (3) improperly transferred $6000 of Bessie's money to Lucille's estate in the absence of evidence that this sum was owed Lucille; (4) improperly charged Bessie for accounting services necessary to resurrect Remer's poor bookkeeping practices; (5) failed to pay Bessie her $2704 share of the December 1, 1988 rental income attributable to her 10.42% life estate interest; (6) improperly charged Bessie's 10.42% life tenancy interest for improvements made after the sale of her fee simple interest to GFI; and (7) improperly charged Bessie for penalties exacted when Remer, as her conservator, had failed to pay her real estate taxes on time. For these transactions, the court entered judgment against Remer and GFI for $64,550 and judgment against Remer individually for $23,181.[3] Although the administrator had sought to recover punitive damages from Remer, the court's original decree did not speak to that issue. The administrator filed a motion under Iowa Rule of Civil Procedure 179(b) pointing this out. In ruling on that motion, the court amended the decree to include a judgment against Remer for $20,000 in punitive damages. Other details of the transactions under review will be discussed in our consideration of the legal issues presented.

## I. Scope of Review.

Whether the proceeding was legal or equitable is determinative of this court's standard for reviewing this matter. *In re Estate of Wulf,* 526 N.W.2d 154, 155 (Iowa 1994). Iowa Code section 633.33 provides:

2. The initial orders approving the sale were entered by a district court judge other than the judge who decided the issues being argued on this appeal.

3. Those judgments contain a substantial amount of prejudgment interest computed to the date of the decree.

Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity.

It does not appear that the issues in this case fall into any of the categories listed as triable in probate as law actions. The district court tried this case as a proceeding in equity. Therefore, this court's review is de novo. Iowa R.App. P. 4.

## II. *The Land Sale Transaction.*

We first consider the claim of Bessie's administrator that, because conservator Remer's self-dealing with the property of his ward was not in the ward's best interests, the sale of the farm to GFI should be set aside.

A. *Self-dealing not prohibited.* We begin our analysis by recognizing that under Iowa law self-dealing by fiduciaries is permissible if approved by the court after a finding that there is an adequate reason for the transaction. Iowa Code § 633.155 (1987). The granting of court approval requires notice and opportunity to be heard on the part of all interested persons. *Id.* When an order authorizing fiduciary self-dealing is entered in the absence of notice to persons entitled thereto, those persons entitled to notice may seek review of the order at any time prior to the approval of the fiduciary's final report. Iowa Code § 633.37.

B. *Notice requirements.* Two notice requirements are directly involved in the administrator's challenge to Remer's sale of the farm to GFI. The first is the requirement placed on a conservator making an application to sell property of the ward. In this situation, section 633.652 incorporates the procedures for the sale of

property by a personal representative of a decedent. Subject to exceptions not applicable to the present situation, those procedures require that notice of an application to sell property must be given to "all persons interested." Iowa Code § 633.389.

The second notice requirement exists as part of the statutory requirement for court approval of self-dealing by fiduciaries. This statute provides:

No fiduciary shall in any manner engage in self-dealing, except on order of court *after notice to all interested persons,* and shall derive no profit other than the fiduciary's distributive share in the estate from the sale or liquidation of any property belonging to the estate. Every application of a fiduciary seeking an order under the provisions of this section shall specify in detail the reasons for such application and the facts justifying the requested order. The notice shall have a copy of the application attached, or, if published, it shall contain a detailed statement of the reasons and facts justifying the requested order.

Iowa Code § 633.155 (emphasis added).

Although the district court found that the orders for court approval that Remer obtained on these transactions could be reconsidered more than eight years after their entry because of a failure to give notice to interested persons, the court did not suggest to whom notice should have been given. The answer to this question is not entirely clear. In the case of an application to sell property made by a personal representative, the controlling statute defines "all persons interested" as including "only distributees in the estate and persons who have requested notice as provided by this Code." Iowa Code § 633.389. This definition is obviously inapplicable to a conservator's application to sell property of a living ward.[4]

---

4. It is inapplicable because neither category of persons entitled to notice under the § 633.389 definition exists in the conservatorship setting. There is no statutory provision

for persons who are interested in the activities in a conservatorship to request notice as is the case for persons interested in a decedent's estate. Moreover, while the ward is still liv-

Notwithstanding the absence of a clear directive in our probate code concerning those persons entitled to notice of a conservator's sale of a ward's property, our case law is specific enough to answer the question for purposes of the present dispute. Under an earlier version of our probate statutes, this court held:

It is settled by the decisions of this court that a proceeding by a guardian, for the purpose of obtaining an order from the proper court for the sale of the real property of his ward, is not a proceeding *in rem*, but an adversary proceeding, and that a guardian's sale of real estate, without the notice required by law is void for want of jurisdiction in the court ordering the same.

*Lyon v. Vanatta*, 35 Iowa 521, 524 (1872) (citing *Washburn v. Carmichael*, 32 Iowa 475, 478 (1871)). In the *Lyon* and *Washburn* cases, we held that notice of the application to sell a ward's property must be given personally to the ward even though that person is a minor and that the response in such situations should be made by a guardian ad litem. In interpreting section 633.652 and section 633.389 of our current probate code, we hold that a similar result, requiring notice to the ward, should hold forth if the ward is incompetent. Moreover, we believe that in the present case notice to the ward was also required by the self-dealing provisions of section 633.155. The type of notice that is contemplated is a notice of the time and place of hearing on the application to sell the ward's property. Iowa Code § 633.38. When notice of the hearing is given to an incompetent person, the response should be made by a guardian ad litem pursuant to Iowa Rule of Civil Procedure 13. Because no notice of the proposed sale was given to Bessie, the district court correctly found that the order approving the sale was not binding on Bessie's administrator. *See In re Estate of Borrego*, 490 N.W.2d

833, 837 (Iowa 1992) (order approving attorney fees granted without notice not binding on parties entitled to notice).

C. *Consequences of not giving notice.* The expression of the court in the *Lyon* case with respect to a sale without notice being void was in regard to a collateral attack on the sale. When, as in the present case, a challenge is made before the conservator's final report has been approved by the court, the matter is reviewable by the court as provided in Iowa Code section 633.37. Because a party entitled to notice should not be prejudiced by a prior order entered without notice, we conclude that a review pursuant to section 633.37 should involve a consideration anew of all of the issues within the context of the situation existing at the time of the prior order. *See Borrego*, 490 N.W.2d at 837 (order approving attorney fees granted without notice to interested parties must be resubmitted pursuant to Iowa Code section 633.37).

D. *The fairness issue.* Although the administrator relies on burden of proof rules established in self-dealing cases such as *Clinton Land Co. v. M/S Associates, Inc.*, 340 N.W.2d 232, 234–35 (Iowa 1983), we need not resort to those rules here. Those proof rules were derived in fiduciary settings not subject to court supervision. It is axiomatic that in situations in which a fiduciary may only act with court approval and the issue is whether that approval should be given, the burden of justifying the action taken rests on the fiduciary. *See In re Boyd*, 231 Iowa 1325, 1329, 4 N.W.2d 387, 390 (1942) (burden of proof on trustee in application for approval to use trust funds for farm improvements).

In our de novo review of the district court's decree, we are satisfied with its finding that Bessie's cash flow at the time of the application to sell the farm was

ing, the distributees of the ward's estate are as yet undetermined. In analogous situations, we have concluded that a prospective right to inherit does not confer standing to

obtain a judicial resolution involving the source of the prospective inheritance. *See Birkhofer v. Birkhofer,* 610 N.W.2d 844, 847 (Iowa 2000).

barely adequate to meet her current expenses and that those expenses were very likely to increase. Bessie had no other assets that she could liquidate to solve that dilemma. Although Bessie's administrator argues that the $575 per acre purchase price was inadequate, the evidence presented indicates that it was a fair price. Based on those circumstances, we cannot dispute the district court's conclusion that a sale of the farm appeared to be a prudent measure. Notwithstanding our agreement with these conclusions, we are convinced that the transaction, as proposed by Remer, should not have gained court approval.

As the common saying goes, "the devil is in the details"—in this case in the details of the contract of sale. As a transaction was proposed and approved by the court, GFI made no monetary down payment to Bessie. The down payment of $3274 recited in the agreement was satisfied by GFI or Remer paying an installment payment owed by Bessie on the grain bin lease. As noted earlier, the district court ultimately ruled that Bessie should not be held responsible for that obligation because it benefited Remer and GFI exclusively and did not benefit her.

Although the contract was executed on August 2, 1988, and was written so as to be retroactive to March 1, 1988 (when GFI purported to have taken possession), it called for no actual payment to Bessie until January 1, 1989. At that time a $9592 interest payment and an $8074 principal payment were required of GFI. The cash rent for the property had been payable on December 1 of each year in a lump sum of $26,000. Bessie's share was $20,584. Bessie had been paid her share of the December 1, 1987 rental payment when the sale to GFI occurred, but the contract released GFI from rental payments for Bessie's fee simple interest on December 1, 1988, or thereafter. After the sale, Bessie continued to be entitled to rentals from GFI for her 10.42% life tenancy interest. This amount would have been $2704 annually. It was never paid to her and was the subject of a judgment against Remer and GFI in the district court's decree.

As a result of the transaction approved by the probate court, Bessie, instead of being entitled to $20,584 in rentals on December 1, 1988, was entitled to $2704 in rentals on that date and $17,666 in principal and interest payments on January 1, 1989. For each year thereafter, the contract called for an amortized interest and principal payment of only $16,167 annually. Although the application to the court recited that, if the sale was approved, "the proceeds receivable by the [ward's] estate will be in excess of the rentals received annually," this obviously was not the case.

The transaction did relieve Bessie of expenses required to maintain the property. Among these expenses was the grain bin lease payment, which the court found was properly payable by GFI or Remer in any event. The record indicates that the legitimate annual expenses of which she was relieved were real estate taxes of $3400, a federal land bank loan payment of $900, and other miscellaneous expenses estimated at $800. It is obvious that if Bessie's cash flow problem was in any way improved by the sale to GFI this was only minimally so. She still had no cushion for unexpected expenses and was in fact far worse off with respect to a source of financial security. Instead of owning a 68.75% fee simple interest in a minimally encumbered farm, she had only a contract right to payment of $16,167 annually. Based on these circumstances, we find that the sale of Bessie's farm real estate to GFI was not in her best interest and should not have been approved by the court. We reverse that portion of the district court's decree approving the sale.

■ E. *Consequences of disapproval of sale.* The ward is now dead. When a conservator's application for sale of real estate is ultimately disapproved, ownership of the property is as if no sale had taken place. Although a conservator

may continue to carry out actions previously approved by the court prior to the death of the ward, *see Matter of Conservatorship of Britten*, 430 N.W.2d 408, 410–11 (Iowa 1988), when that approval is ultimately denied on direct attack, the conservator must account for and deliver the property to the ward's personal representative. *In re Damon's Guardianship*, 238 Iowa 570, 576, 28 N.W.2d 48, 51 (1947). When this occurs more than eleven years after the ward parted with possession of the property, there will be some complications in restoring the status quo. As a general proposition, this requires each person to return to the other either in kind or in matching value what each person has received. *Hyler v. Garner*, 548 N.W.2d 864, 874 (Iowa 1996). We remand the case to the district court for a resolution of those matters consistent with directions from this court.

▮▮▮ In certain cases, the remedy for acquiring property through self-dealing includes an accounting for any profits obtained through the use of the property so acquired. *See Coster v. Crookham*, 468 N.W.2d 802, 806–07 (Iowa 1991). We do not approve of such a remedy in the present case. Instead, we direct that on remand the district court shall take evidence and fix the reasonable rental value of Bessie's 68.75% fee simple interest in the property for the period subsequent to March 1, 1988, and until Bessie's administrator regains possession thereof. Evidence should also be taken concerning (1) the value of the walnut trees that Remer and GFI removed from the property, (2) the amount of all principal and interest payments that have been paid by GFI or Remer on the contract of sale and on Bessie's share of the Federal Land Bank mortgage, (3) the value of any beneficial improvements Remer or GFI have placed on the property, and (4) the property taxes that have been paid by them during that

same period.[5] If the rental value of the 68.75% fee simple interest plus the value of the walnut trees exceeds the sum of the contract and mortgage payments, the value of the beneficial improvements and the property taxes paid, Bessie's administrator shall have judgment jointly and severally against Remer and GFI for the difference. If the total of the contract and mortgage payments, beneficial improvements, and tax payments exceed the sum of the walnut tree value and rental value of the 68.75% fee simple interest, the difference shall be set off against the administrator's other judgments against Remer and GFI.

Our goal is an equitable adjustment of the rights of the parties. For this reason, we must recognize the possibility that circumstances may have arisen during the pendency of this litigation of which we are unaware. If, following remand, that is found to be the case, the district court may deviate from our formula to the extent required to effect an equitable solution.

### III. *The Cross–Appeal Issues.*

Remer and GFI appeal from the miscellaneous judgments that were entered against them by the district court with respect to the transactions previously described in this opinion. In reviewing the record de novo, we are satisfied that the district court's findings and judgments were entirely proper with respect to each of these items subject to certain changes required by reason of our abrogation of the land sale. These changes are discussed in division III(F) and division IV of this opinion.

We review each item of damage briefly.

▮▮▮ A. *Judgment for amounts expended on grain bin lease.* The district court awarded damages for sums charged to Bessie for the leasing of grain bins because it concluded that the bins were not erected to benefit her. The record indi-

---

5. The values for the walnut trees, mortgage payments, improvements, and taxes must be

in proportion to Bessie's fractional interest.

cates that, when Remer obtained court approval to enter into the bin leases on Bessie's behalf, he advised the court that she had the need for additional storage space. The lease of the fee to GFI did not require the lessors to make capital improvements. As it turned out, the bins were entirely for the benefit of Remer and GFI. Bessie did not need additional grain storage. The slight amount of grain that she had was adequately stored when the application for permission to enter into the lease was presented to the court. There was no indication that she would personally acquire any additional grain subsequent to that time. The district court correctly entered judgment against Remer and GFI for the amount of Bessie's funds expended on the grain bin leases.

■ B. *Judgment for farm management fees paid to Remer.* The district court concluded that Bessie's administrator should recover from Remer amounts expended for management fees not approved by court order. An expert witness testified at length concerning the gross inadequacy of Remer's services as a farm manager and the abysmal state of his record keeping. The district court concluded that Remer's services were of no benefit to Bessie. We agree with that conclusion and the judgment for recoupment of the fees.

■ C. *Judgment for funds improperly transferred from Bessie's conservatorship to Lucille's estate.* On April 18, 1989, Remer took from Bessie's conservatorship the sum of $6000 denominated as a "windup settlement." This purported to be a payment to settle accounts between Bessie and the estate of her sister, Lucille. When called to account for this transaction, Remer was unable to provide any documentation that would establish that Bessie owed $6000 to Lucille's estate. Nor did his oral testimony satisfactorily explain what the cash transfer was for. The district court's decree properly entered judgment against Remer for recoupment of the $6000.

■ D. *Judgment for accounting fees improperly charged to Bessie's conservatorship.* At the time of Lucille's death, Remer's brother began asking questions concerning her financial affairs. Remer was unable to provide a satisfactory accounting from records in his possession. He engaged an accounting firm for purposes of establishing a comprehensible accounting of the Jordan farm partnership during the time that Remer had acted as farm manager. There was clearly no basis to charge Bessie's conservatorship account for any of these services, and the district court properly entered judgment against Remer for those accounting fees that had been paid from her funds.

■ E. *Failure to pay rentals attributable to Bessie's life estate interest.* This issue concerns the $2704 in rentals that were properly attributable to Bessie's 10.42% life estate interest. As noted in our prior discussion, Remer has acknowledged GFI's liability to Bessie for that sum. He was unable to document any payment to Bessie of that amount for the rental due on December 1, 1988. When an obligation is proven and a corresponding payment is not established by the obligor, judgment against the obligor for the sums claimed is entirely proper. *Glenn v. Keedy,* 248 Iowa 216, 221, 80 N.W.2d 509, 512 (1957); *Folsom v. Grove,* 233 Iowa 1140, 1143, 11 N.W.2d 368, 369 (1943).

F. *Improper apportionment of farm improvement expenses to Bessie's life estate interest.* The district court entered judgments against Remer and GFI for the cost of improvements paid for by Bessie after she had sold her fee simple interest. The court concluded that a life tenant of only a 10.42% interest had no obligation to pay for major improvements made by the owners of the other fractional interest in the property. Although we believe the district court's conclusions were correct based on the circumstances that existed, our decision in this case has altered the relevant ownership interests *ab initio.* In the earlier portion of our opinion rescind-

ing the farm sale, we have provided that the value of the beneficial improvements shall be taken into consideration in attempting to restore the status quo. This does not include all improvements—only those that have benefited the interest of Bessie's successors in interest. We make no conclusion as to whether the expenses involved in this particular judgment entry (for the amount of $5064) were beneficial in that regard. The nature of improvements made must be considered by the district court in the reconciliation that will take place after remand.[6] If the improvements involved in the $5064 judgment were beneficial, the district court shall delete that particular judgment and accompanying prejudgment interest from the decree and consider the improvements with regard to the reconciliation of accounts that we have directed. If the improvements were not beneficial, the $5064 judgment and accompanying interest should stand.

■■■ G. *Real estate tax penalties paid with Bessie's funds.* In the years 1986, 1987, and 1988, Remer failed to make timely payment of the real estate taxes due on the property. When the taxes were finally paid, a penalty was assessed. Remer used Bessie's funds to pay those penalties in proportion to her share of the taxes. The district court concluded that Remer failed to offer any plausible excuse for not paying the taxes on time and that, consequently, he and not Bessie should be held responsible for the amount of these penalties. The record fully supports that finding.

■■■ H. *Punitive damages.* Remer contends that the award of punitive damages against him was unwarranted. We disagree. Although punitive damages are usually a remedy imposed in actions of law, courts of equity may also employ this remedy. *Holden v. Construction Mach. Co.,* 202 N.W.2d 348, 360 (Iowa 1972);

*Charles v. Epperson & Co.,* 258 Iowa 409, 431–32, 137 N.W.2d 605, 618 (1965).

■■■ In awarding punitive damages against Remer, the district court noted:

As the court has stated in the decree, Mr. Remer's course of self-dealing was persistent, extreme and pervasive. It continued over a long period of time and affected almost every aspect of Ms. Jordan's financial affairs.

. . . .

The most difficult question to be determined is whether all of the deficiencies in Mr. Remer's conduct were the result of severe chronic incompetence. A course of misconduct, even if it is extensive in duration and scope, does not justify punitive damages if it is the result of ordinary negligence and lack of ability.

Some of the compensatory damages awarded in this case undoubtedly resulted from ordinary negligence. Mere negligence, however, does not account for Mr. Remer's long course of self-dealing. The self-dealing resulted from complete disregard for Mr. Remer's obligations as a fiduciary and for the rights of his ward.

Our review of the record convinces us that these conclusions were correct and that punitive damages in the amount awarded were proper.

**IV.** *Adjustment of Certain Judgment Amounts.*

The judgments entered against Remer and GFI included not only the recoupment of funds that had been expended from Bessie's conservatorship but also amounts that she had never paid but which had been used to reduce the price for the sale of her land. Because the contract is now being judicially annulled, the latter elements of damage are no longer appropriate, and the judgments should be amended so as not to include them. These items

---

6. The grain bins involved in the transaction discussed in division III(A) shall not be considered to be a beneficial improvement for purposes of the reconciliation.

are (1) a $342.67 overstatement of the amount of Bessie's share of the Federal Land Bank mortgage obligation, (2) an $8799.81 reduction of the contract price for management fees, and (3) a $13,094.85 reduction for Bessie's remaining obligation on the grain bin.[7]

Another item for which judgment against Remer and GFI has now been made inappropriate is the underpayment of interest on the contract of sale prior to January 1, 1989, in the amount of $1130.06. Deletion from the judgment of the four items mentioned will also require a substantial adjustment of the district court's interest calculations. On remand, the district court shall recompute the amounts of the judgments against Remer and GFI according to our directions.

We have considered all issues presented and conclude that the portion of the district court decree upholding the land sale should be reversed. The case is remanded to that court for the restoration of the status quo consistent with our directions for reconciliation and, where we have directed, for amendment of the judgments against Remer and GFI. All other portions of the district court decree are affirmed.

Costs of appeal are assessed to the appellees.

**REVERSED AND REMANDED ON APPEAL, AFFIRMED AS MODIFIED ON CROSS-APPEAL.**

All justices concur except SNELL, J., who takes no part.

---

**7.** If following remand it appears Bessie's successors in interest have some future liability on the grain bin debt, the court shall require Remer and GFI to hold them harmless therefrom.