**IN THE COURT OF APPEALS OF IOWA**

No. 18-1332
Filed September 25, 2019

**IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF MABELLE L. RASKA,**

**MABELLE L. RASKA,**
        Ward-Appellant.

_____

        Appeal from the Iowa District Court for Hamilton County, Timothy J. Finn,

Judge.


        Mabelle Raska, through her guardian ad litem, appeals a district court order

approving a gift from conservatorship funds.  **REVERSED.**



        Joseline L. Greenley, Webster City, guardian ad litem for appellant.

        Steven W. Hendricks of Kersten Brownlee Hendricks PLLC, Fort Dodge, for

appellee.



        Heard by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Mabelle Raska, through her guardian ad litem, appeals a district court order approving a gift from conservatorship funds to the Wilson Brewer Park Foundation (Foundation). The guardian ad litem argues the district court erred by failing to review Mabelle's will to determine her testamentary intent. The guardian ad litem further argues the gift was given without good cause to an organization that was neither a named testamentary beneficiary nor a beneficiary of lifetime donations and was not structured to maximize income-tax benefits.

**I.     Background Facts and Proceedings**

Mabelle Raska and her late husband, Verner Raska, lived in Webster City for several years, across the street from Wilson Brewer Park. At some point, Mabelle moved to a nursing and rehabilitation center. In February 2017, Mabelle's nephew, Floyd Poole, petitioned for appointment as guardian and conservator of Mabelle. The petition was involuntary, based on Mabelle's incapacity to make decisions regarding her finances. A guardian ad litem was appointed to represent Mabelle in the proceedings. The district court granted the petition in March 2017. The initial report filed in March 2017 valued Mabelle's total assets at $2,906,365.[1] The first annual report filed in March 2018 stated the value of Mabelle's assets rose to $3,287,958.45. Among funds received during the reporting period were Social Security in the amount of $5230, nursing home insurance benefits of $41,623, and benefits from another insurance policy of $3989. Her nursing home

---

[1] This figure includes real estate assets valued at $50,000.00; stocks and bonds valued at $2,845,195; and mortgages, notes, deposits, and cash valued at $11,170.

expense was $51,673 and "Taxes (Estimates for State & Federal & Tax Prep.)" totaled $1370.

The March 2018 annual report was followed by an application to the court to approve a $100,000 gift to the Foundation from conservatorship funds. The application alleged the gift was a tribute to Mabelle and Verner personally and would result in an income-tax benefit. In her response to the application, Mabelle's guardian ad litem raised several concerns, including, among other things, a lack of congruence with Mabelle's testamentary intent, diminished interests to residuary beneficiaries of Mabelle's estate, lack of sufficient evidence regarding the alleged income-tax benefit, and the need for investigation of Mabelle's history of charitable contributions. Furthermore, the guardian ad litem noted the Foundation was led by Poole's attorney in the guardianship and conservatorship proceedings. Ultimately, the guardian ad litem requested that the district court review Mabelle's will to determine whether the gift to the Foundation was within her testamentary intent.

In June 2018, Poole applied for and was appointed new counsel for the limited purpose of representing him in relation to the application to make the Foundation gift. Poole continued to request the gift, stating he believed there to be sufficient income in conservatorship funds and his belief Mabelle would want to make the gift but never had the opportunity to do so.[2] During a June 11, 2018 hearing, Poole stated his belief was based on personal knowledge that the park's

---

[2] Poole alleges he learned of the opportunity to donate to the Foundation following his appointment as conservator. The Foundation was established in 2004 but did not gain tax-exemption status until 2016.

maintenance was important to Mabelle because of statements she and Verner made indicating they "hoped it would be taken care of and not just let sit there and go to pieces." Poole also noted both Mabelle and Verner "commented several times when other improvements were made to the park and that they hoped it would continue." Poole stated the income-tax benefit would be spread over two years, and that he did not intend to make any other charitable donations from the conservatorship funds. Poole also testified Mabelle made donations to her church consistently in the past, but as conservator he had made none. In 2017, the conservatorship made only two charitable contributions: $50 to United Service Organizations (USO) and $10 to Veterans of Foreign Wars (VFW). Poole's brief in support of the application noted the Foundation was not a testamentary beneficiary named by Mabelle but argued there were sufficient funds for the gift, good cause supported the gift, Mabelle never had an opportunity to donate herself, and the gift would result in an income-tax benefit.

The district court granted the application for a $100,000 gift to the Foundation. In approving the gift, the court stated only "that the Iowa Code and case law cited" supported the gift and made no further findings of fact. The guardian ad litem for Mabelle moved the court to expand the order, specifically requesting a more thorough discussion of factual determinations and to structure the gift to maximize any income-tax benefit. The motion was denied. This appeal followed.

## II.    Standard of Review

The Iowa Code specifically designates "[a]ctions to set aside or contest wills, for the involuntary appointment of guardians or conservators, and for the

establishment of contested claims" as probate actions triable at law. Iowa Code § 633.33 (2018). All other probate actions are equitable. *Id.* Appeal from an order approving a gift from conservatorship funds is not within the designated at-law actions and is therefore tried in equity. *Id.* Accordingly, our review is de novo. *In re Guardianship & Conservatorship of Jordan*, 616 N.W.2d 553, 557–58 (Iowa 2000). Appellate courts are not bound by legal conclusions or factual findings of district courts but will give deference to the district court's fact findings. *In re Estate of Johnson*, 739 N.W.2d 493, 496 (Iowa 2007).

## III. Analysis

The guardian ad litem raises four arguments on appeal. We will first address her challenge to the burden of proof.

### A. Burden of Proof

The guardian ad litem correctly notes the conservator bears the burden of proof to show good cause when making an application for a gift from conservatorship funds. Iowa Code § 633.668.[3] The guardian ad litem argues the burden of proof required for a conservator's application for a gift should be raised to the level of clear and convincing evidence. In arguing for the clear-and-convincing-evidence standard, the guardian ad litem points to several

---

[3] Iowa Code section 633.668 provides:

> For good cause shown and under order of court, a conservator may make gifts on behalf of the ward out of the assets under a conservatorship to persons or religious, educational, scientific, charitable, or other nonprofit organizations to whom or to which such gifts were regularly made prior to the commencement of the conservatorship, or on a showing to the court that such gifts would benefit the ward or the ward's estate from the standpoint of income, gift, estate or inheritance taxes. The making of gifts out of the assets must not foreseeably impair the ability to provide adequately for the best interests of the ward.

guardianship and conservatorship issues governed by that standard, among other probate issues.[4]  In terms of the guardianship and conservatorship statutory provisions cited, the standard for an application to make a gift from conservatorship assets is distinguishable.  When a court considers an application to make a gift, the conservator is merely seeking authority to make a gift.  *Id.*  In the situations cited by the guardian ad litem, the court is making a determination of a person's qualifications to serve as a guardian or conservator, or whether a ward has the capacity to act on his or her own behalf.  There are good reasons for a court to demand a higher burden of proof in those situations, as they deal with a person's ability to make decisions or care for themselves and appointment of a guardian or conservator when one cannot do so.  Here, the conservator is merely asking for permission to make a gift when the court has already determined the ward cannot act in her own financial well-being.  We also note that in seven of the eight examples cited by the guardian ad litem that require clear and convincing evidence, the legislature mandated it in the statutes.  The eighth example is from case law.  The authority for a conservator to make a gift is purely statutory, and the legislature made no requirement for clear and convincing evidence.  *See id.* Accordingly, the burden of proof in this matter is preponderance of the evidence. Iowa R. App. P. 6.904(3)(f).

---

[4] *See, e.g.*, Iowa Code §§ 633.437(2) (changing order of abatement), .519 (presumption of death), .551 (incompetency of proposed ward), .556 (appointment of guardian), .570 (appointment of conservator), .635(5) (restricting powers or control of the ward), .675 (continuing guardianship or conservatorship after the ward has made prima facie showing of decision-making capacity).  The guardian ad litem also points to the use of the clear-and-convincing-evidence standard in undue-influence determinations.  *In re Estate of Todd*, 585 N.W.2d 273, 276 (Iowa 1998).

B.      Good-Cause Finding

The guardian ad litem argues against the district court's good-cause finding. She alleges the district court should have examined Mabelle's will to determine whether the gift was within the ward's testamentary intent and insufficient evidence was presented to support the good-cause finding.

*1.      Failure to Review Mabelle's Will*

A conservator is required to file a ward's will with the court immediately upon receipt.  Iowa Code § 633.643.  A court is permitted to review a will and "enter such orders in the conservatorship as it deems advisable for the proper administration of the conservatorship in light of the expressed testamentary intent of the ward." *Id.* § 633.644.  When considering an application for charitable donation of conservatorship assets, courts are not expressly required to read a ward's will. *See id.* § 633.668.  To make a charitable donation of conservatorship funds on the ward's behalf, the conservator must show good cause and seek court approval. *Id.*  A conservator is also required to perform fiduciary duties in management of conservatorship assets to ensure a ward is protected financially.  *See id.* § 633.641.

The guardian ad litem's argument connects the fiduciary duties owed by a conservator pursuant to Iowa Code section 633.641[5] to a court's ability to review

---

[5] Section 633.641 provides:
> It is the duty of the conservator of the estate to protect and preserve it, to invest it prudently, to account for it as herein provided, and to perform all other duties required of the conservator by law, and at the termination of the conservatorship, to deliver the assets of the ward to the person entitled thereto.

a will pursuant to section 633.644.[6]  According to the guardian ad litem, "knowing that the intended recipient of the gift was not a named beneficiary, . . . effectively defeated Mabelle's testamentary desire to give her estate to other individuals or entities."

The statutory language specifically includes direction to "deliver the assets of the ward to the person entitled thereto" upon termination of the conservatorship. *Id.* § 633.641.  A conservatorship will terminate on the death of a ward, among other events.  *Id.* § 633.675(1).  Poole filed Mabelle's will with the district court as required in section 633.643.  In his brief supporting the gift application, Poole admitted the Foundation was not a named beneficiary of Mabelle's will.  Poole also admitted there was no history of donations to the Foundation.  In fact, there is no evidence of Mabelle or her husband having ever made a charitable donation even approaching the amount of the donation in this case.

Given Mabelle's deteriorating health status, death will likely be the event that will terminate the conservatorship.  At that time, the assets will be transferred to her probate estate for ultimate distribution to the beneficiaries named in her will.  Even though the court had Poole's representations about the contents of the will, an examination by the court would have disclosed all of the contents of Mabelle's will and her testamentary plan and would have been relevant to the court's consideration of whether good cause exists for the conservator to make lifetime gifts.  However, failure to review the will is not fatal in this case.

---

[6] Section 633.644 provides the court may enter orders "it deems advisable for the proper administration of the conservatorship in light of the expressed testamentary intent of the ward."

### 2. *Donative Intent and Tax Benefits*

The guardian ad litem argues insufficient evidence was presented to support the court's findings Mabelle had donative intent toward the Foundation and that an income-tax benefit would result from the gift.[7]  Because our review is de novo, we will decide the case anew, rather than apply a sufficiency-of-the-evidence analysis.  *See In re Guardianship of Hedin*, 528 N.W.2d 567, 581 (Iowa 1995)

Poole admitted Mabelle never made a gift to the Foundation herself but recounted discussions with Mabelle he believed provided the basis for the gift.  Poole's testimony shows his knowledge that Mabelle had a history of donations to her local church, but the testimony does not indicate large donations were ever Mabelle's practice.  Poole made no church donations as conservator and stated he did not intend to make them in the future.  Poole made two charitable donations prior to the application, $50 to USO and $10 to VFW, based on his uncle's past involvement in the military.  Poole testified he did not intend to make any further charitable gifts following the gift to the Foundation.  Poole's decision to make a gift to a new entity is not fatal.  Iowa Code section 633.668 does not require a conservator to limit recipients of gifts from conservatorship funds to those to which a ward has given in the past.  But, without such history, the gift must provide a tax benefit to the conservatorship and cannot impair the best interests of the ward.  Iowa Code § 663.668.  There is no language in the statute requiring a court to structure a gift to provide the maximum tax benefit to conservatorship assets.  *Id.*

---

[7] The guardian ad litem also argues a conflict of interest existed because of the conservatorship attorney's work as the president of the Foundation.  The guardian ad litem makes no citations to relevant authority in her brief, thus we deem the argument waived.  *See* Iowa R. App. P. 6.903(2)(g)(3).

Rather, it is the conservator's responsibility to seek court approval for the gift and show good cause. *Id.*

In its order granting the application, the district court concluded case law and statutes cited supported the gift. It made no further factual findings. In its ruling on the guardian ad litem's motion to enlarge, the court still referenced only testimonial support for Mabelle's relationship to the park. The court noted Mabelle's physical proximity to the park due to her former residence, her statements to Poole that she enjoyed the park, and the fact that the gift would enhance the park Mabelle enjoyed throughout her life. The guardian ad litem did not refute evidence that Mabelle enjoyed looking at the park, but the testimony showed her past donative intent was directed toward her local church. Testimonial evidence of a mere relationship to the park and a hope it be well-kept does not provide support for a $100,000 gift, especially when Mabelle's regular modest donations to her preferred organization—her church—had been discontinued by Poole.

Poole also testified an income-tax benefit over two years supported the gift. Poole's testimony was based on statements he attributed to Mabelle's tax preparer. The guardian ad litem's own statements during Poole's examination indicate her belief the donation would lead to such a tax benefit. But, there are no tax documents or other statements from the tax preparer in the record to support the testimony or to quantify the claimed tax benefits. The only non-testimonial evidence in the record comes from the annual report filed in 2018. The report lists Mabelle's income from Social Security to be $5230, nursing home insurance benefits in the amount of $41,623, and benefits from another insurance policy of

$3989.  The expenses listed include nursing home expenses of $51,673 and "Taxes (Estimates for State & Federal & Tax Prep.)" of $1370.  Because of the statutory requirement of a tax benefit to the conservatorship in the absence of regular gifts to the Foundation, proof of a tax benefit was required in order to satisfy section 633.668.  On our de novo review, we find the evidence does not support a finding of good cause to support the gift to the Foundation.

## IV.    Conclusion

We reverse the district court order granting the application to make the $100,000 gift to the Foundation from conservatorship assets.

**REVERSED.**